Daniel J. Weintraub – Bar #132111
David B. Zolkin – Bar # 155410
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (310) 207-1494
Facsimile: (310) 442-0660
Email: dweintraub@wztslaw.com
Email: dzolkin@wztslaw.com

General Bankruptcy Counsel to
Chapter 11 Debtor and Debtor in Possession,
KOMBU KITCHEN SF LLC, dba NIBLL

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>KOMBU KITCHEN SF LLC, dba NIBLL,<br><br>      Debtor and Debtor In Possession. | Case No. 2:23-bk-17276-SK<br><br>Chapter 11<br><br>Subchapter V<br><br>**REPLY TO CLASS CREDITORS' JOINT OPPOSITION OF CLASS CREDITORS TO FIRST INTERIM APPLICATION OF WEINTRAUB ZOLKIN TALERICO & SELTH LLP FOR APPROVAL OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**<br><br><u>Hearing</u>:<br>Date:     October 16, 2024<br>Time:     10:00 a.m.<br>Courtroom: 1575<br>           255 E. Temple Street<br>           Los Angeles, CA 90012<br>Judge:    Hon. Sandra R. Klein |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    RELEVANT BACKGROUND ..................................................................................3

    A.    Basis for Objections to Class Creditors; Proofs of Claims .........................3

    B.    The Plan and Confirmation.........................................................................5

II.   RESPONSES TO SPECIFIC COMPLAINTS OF CLASS CREDITORS ........................9

    A.    WZTS is Entitled to Compensation for the Time Spent on the
        Second Amended Plan After May 22, 2024 ................................................9

    B.    Plan Drafting Errors Did Not Cause the Increased Fees of
        Which Class Creditors Complain................................................................9

    C.    Fees for Work Performed in Connection with G&R's Employment
        Application................................................................................................10

    D.    Fees for Work in Connection with JBB's Employment is Fully
        Compensable.............................................................................................11

    E.    WZTS's Work Should Be Fully Compensable...........................................11

III.  CONCLUSION...................................................................................................12


Exhibit 1 – Proof of Claim 25................................................................................13

Exhibit 2 – Proof of Claim 26................................................................................18

Exhibit 3 – Mandatory Settlement Conference Statement........................................24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In tr Strand*,
    375 F.3d 854 (9th Cir. 2004). ............................................................................................... 11

**STATUTES**

11 U.S.C. § 331 ............................................................................................................................ 11

1     Weintraub Zolkin Talerico & Selth LLP ("<u>WZTS</u>" or the "<u>Firm</u>"), general bankruptcy

2  counsel for KOMBU KITCHEN SF LLC, dba NIBLL, the Subchapter V debtor and debtor in

3  possession (the "<u>Debtor</u>") in the above-captioned bankruptcy case ("<u>Case</u>"), hereby submits its reply

4  ("<u>Reply</u>") to the joint objections filed by the Class Creditors to the Firm's first interim fee application

5  (the "<u>Application</u>") filed in this Case (Doc. No. 301) (the "<u>Objection</u>").

6     Class Creditors contend that the fees requested by WZTS are excessive and unwarranted

7  because a plan has not been confirmed in the Case and that many of the hours billed are for problems

8  purportedly caused by the Debtor and/or WZTS.  Class Creditors request that the Court deny the

9  Application in its entirety and require that WZTS file a new fee application to address unidentified

10  "improprieties", or, alternatively, reduce WZTS's requested fees by 50%.

11     Class Creditors completely ignore their role as dissenters to nearly every step taken by the

12  Debtor from the outset of the Case.  That dissent and their ongoing challenges to the Debtor, as

13  debtor in possession, and its efforts to exit this Case, and their own lack of good faith in filing proofs

14  of claim that not only were without support but were entirely inconsistent with positions taken by

15  them in their state court litigation against the Debtor and Thibeaults have played an instrumental

16  role in the delay of which they now complain.

17     WZTS's fees in this Case have been reasonable and necessary. The fees are where they are

18  due to the litigious behavior of Class Creditors and their unwillingness to engage in settlement

19  discussions with the Debtor, despite good faith efforts by the Debtor that were spearheaded by

20  WZTS.  The Subchapter V Trustee has also tried and had no success bringing Class Creditors to the

21  table. WZTS and the Trustee have emphasized since Day 1 that Class Creditors' litigiousness and

22  unwillingness to engage in settlement discussions based on the Debtor's financial abilities would

23  result in increased administrative claims and a reduced distribution to unsecured creditors.  This has

24  fallen on deaf ears.

25     Despite Class Creditors' claims to the contrary, WZTS's services have benefited the estate.

26  Although it is true that the plan process has been delayed, that delay does not mean that there has

27  not been progress or that the Debtor will not be able to confirm its plan.  The Debtor believes the

28  sole remaining issue concerning confirmation is the amount of the Class Creditors' claims against

1    the Debtor.  Once the claims are liquidated in the upcoming state court trial and this Court gives the

2    Debtor the green light to proceed it will do so.

3    Finally, Class Creditors' contention that WZTS should not have any of its fees allowed, or

4    any more than 50% of its fees allowed, lacks any explanation or justification by Class Creditors. It

5    is completely arbitrary and without specificity.  Class Creditors' further contention that, by allowing

6    the fees and expenses of WZTS, the Court "would decimate the estate" entirely ignores the relief

7    requested in the Application and the applications of the other professionals.  The Application seeks

8    allowance of only 80% of WZTS's total fees.  The remaining 20% represents a holdback of over

9    $70,0000, a significant sum that the Debtor and WZTS believe to be reasonable under the

10   circumstances. In addition, as disclosed in each of the interim fee applications, the Debtor and the

11   other professionals who have filed interim fee applications have agreed to receive payment of

12   $170,000 following the Court's entry of any order(s) approving those applications.  The $170,000 is

13   to be divided ratably among the applicants, with further monthly payments of $15,000 a month to

14   be ratably divided among them as well.  The initial $170,000 payment represents approximately 36%

15   of the total fees and expenses incurred by the professionals whose fee applications are now before

16   the Court. That is hardly unreasonable under the circumstances of this Case.[1] To the contrary, the

17   proposed payment structure is reasonable because it takes into account what the Debtor can now

18   afford, while relieving the Debtor's professionals of at least a portion of the fees and expenses that

19   they have been carrying for the past year.

20   **I.      RELEVANT BACKGROUND**

21           **A.      Basis for Objections to Class Creditors' Proofs of Claims**.

22   Class Creditors' suggest that WZTS is not entitled to payment of its fees because the Debtor

23   caused the delay in the plan's confirmation primarily because it joined in the objections filed by the

24   Thibeaults to Class Creditors' proofs of claims, which is beyond ironic given that Class Creditors

25   always wished to proceed to trial in the state court.

---

27   [1] As disclosed in the *Declaration of Keven Thibeault in Support of the First Interim Applications of*
28   *Debtor's Professionals for Approval of Compensation and Reimbursement of Expenses* (Dkt. 293),
     as of August 31, 2024, the cash on hand in the Debtor's operating accounts totaled $674,810.64.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

1  The Debtor did not initially intend to object to Class Claimants' claims against it.  The

2  Debtor, however, did debate whether to do so once it saw Class Claimants' facially defective proofs

3  of claim, without support and most importantly, vastly greater in amount than what the Debtor had

4  understood them to be.

5  On January 10, 2024, Class Creditors filed two separate proofs of claim in this Case.  One

6  subgroup of the Class Creditors, made up of a class led by Aja De Coudreaux, Daeun Hwang, Myriah

7  Sims, Vera Lopez, Nicole Vassallo, and Zena Evans, filed Proof of Claim 25 ("Claim 25"). Claim

8  25 is blank and unsigned (and, hence, unsworn).  A copy of Claim 25 is attached hereto as **Exhibit

9  1**.  Claim 25 is not executed and has attached a single page summary chart with dollar figures totaling

10  $11,097,459.41.

11  Another group of the Class Creditors, made up of a class led by Maria de Jesus Vergara,

12  Paholo Ramos, and Roberto Reyes (the "Vergara Claimants"), filed Proof of Claim 26 ("Claim 26",

13  and, collectively with Claim 25, the "Proofs of Claim").  Claim 26 was completed and was executed

14  by Cody Bolce, counsel for the Vergara Claimants.  A copy of Claim 26 is attached hereto as **Exhibit

15  2**.  The only attachment to Claim 26 is the identical summary chart that was attached to Claim 25.

16  After reviewing the facially deficient Proofs of Claim and what the Debtor believed to be

17  amounts that Class Claimants could not support, the Debtor seriously considered filing objections to

18  the Proofs of Claim.  But the Debtor refrained from doing so until it saw Class Claimants' position

19  in the state court.

20  On April 12, 2024, a mere three months after Class Creditors filed the Proofs of Claim, Class

21  Creditors represented in a mandatory settlement conference statement filed with the state court (the

22  "MSC Statement") that their economic damages amounted to only $5,876,406, an amount that was

23  53% of (and approximately $5.2 million less than) the aggregate amount claimed in the Proofs of

24  Claim.  A copy of the MSC Statement is attached hereto as **Exhibit 3.**

25  WZTS did not become aware of Class Creditors' position regarding their claims until the

26  start of May 2024, when WZTS was advised of the MSC Statement by the Thibeaults' litigation

27  counsel, Craig Ramsdell. Thereafter, further consideration was given to objecting to the Proofs of

28  Claim not only because the Proofs of Claims were facially insufficient, but also because Class

Creditors had taken an entirely inconsistent position regarding their claims in the state court than they had in the Proofs of Claim. By the Proofs of Claim, Class Claimants, without support or explanation, inflated their claims by almost 189% over the amounts they asserted only three months later in the state court litigation.

As the Debtor was preparing for a plan confirmation hearing on May 22, 2024, it was initially contemplated that the Debtor would file any the objection to the Proofs of Claim after that date so that the Debtor could focus its complete attention on plan confirmation.  But ultimately the decision was made to file the objection prior to confirmation so there would be no accusation levied against the Debtor that it improperly had engaged in gamesmanship (as the Debtor had not previously made mention of an intention to object to the Proofs of Claim.)  On May 21, 2024, on the eve of the confirmation hearing, the Thibeaults filed their individual objections to the Proofs of Claims on grounds that included (but also went beyond) the facial failures of the Proofs of Claim and their inconsistency with positions taken by Class Creditors in the state court.  The Debtor joined in the objections.

Neither the Debtor nor the Thibeaults waited months to file the objections to the Proofs of Claim and the joinders thereto. Once the massive inconsistency in amounts was discovered and the decision was made to object, it was mere days.  Under the circumstances, it was not unreasonable for the Debtor to have joined in the Thibeaults' objections immediately ahead of plan confirmation. Although the timing was by no means ideal, the filing before and not after plan confirmation was a good faith effort at transparency.

**B.    The Plan and Confirmation**.

Class Creditors also complain that WZTS spent excessive time relating to the Debtor's plan of reorganization (as amended, modified and supplemented, "Plan").  WZTS disagrees.

WZTS did, in fact, spend substantial time assisting the Debtor in formulating and preparing its Plan.  The Plan was originally to be filed before the end of December 2023, with the goal of moving forward with a confirmation hearing on February 14, 2024.  However in December, the Debtor's largest client, Zoox, Inc., a company representing over forty percent of Debtor's gross revenue, gave notice that it was terminating its catering services agreement with the Debtor effective

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

March 2024, which significantly impacted the Debtor's liquidation analysis and financial projections, requiring material modification. WZTS then worked with the Debtor and its financial advisor, Marcum, to redraft the Plan to reflect the materially altered circumstances in which the Debtor found itself.

In anticipation of filing the redrafted Plan, WZTS prepared and, on January 12, 2024, filed the Debtor's motion for order approving a plan confirmation schedule [Doc. No. 69]. The Court thereafter set the confirmation schedule to require the Plan to be filed by January 29, 2024, ballots to be cast and preliminary objections to be filed and served by March 13, 2024, a confirmation motion to be filed and served by March 20, 2024, objections to the confirmation motion to be filed and served by April 3, 2024, a reply brief to be filed and served by April 10, 2024, and a confirmation hearing on April 24, 2024 [*see,* Doc. No. 104].

On February 28, 2024, Class Creditors filed their *Motion Requesting Expansion of Trustee Duties Pursuant to 11 U.S.C.A. §§ 1106 and 1183* (the "Trustee Expansion Motion") (Dkt. 130), in which they made various allegations (including certain materially inaccurate statements) that they argued warranted the expansion of the Subchapter V Trustee's powers so the Trustee could investigate the operations and affairs of the Debtor. The Debtor did not oppose the Trustee Expansion Motion as it had nothing to hide. The Subchapter V Trustee, however, did oppose the motion. On March 11, 2024, Class Creditors filed a preliminary objection to the Plan (the "Preliminary Plan Objection") (Dkt. No. 138), arguing the Plan should not be confirmed because, they alleged (inaccurately and without evidence)[2], the Plan under-projected the Debtor's disposable income over the life of the Plan, the Debtor would significantly outperform those projections and, consequently, the Debtor should be required to pay more to creditors under the Plan.

On March 20, 2024, the Court heard and continued the hearing on the Trustee Expansion Motion to April 10, 2024. It also raised its own questions regarding the Debtor's monthly operating reports and pushed the confirmation schedule back to permit the Debtor to file any amendments to

---

[2] In the months since the Preliminary Plan Objection, it would appear that Class Creditors might now recognize that the Debtor was not under-projecting its performance.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

1   the Plan by March 27, 2024, its confirmation motion by April 3, 2024, and its reply to any objections

2   to confirmation by April 24, 2024 [*see,* Dkt. No. 151]. The Court continued the confirmation

3   hearing itself to May 22, 2024.

4       WZTS again worked closely with the Debtor and Marcum to further amend the Plan to

5   address concerns raised by the Court, and, on March 27, 2024, filed the Debtor's amendments to the

6   Plan (Dkt. No.154). The Plan, as then amended, proposed to pay unsecured creditors $326,355, its

7   projected disposable income over a period of three years. Administrative claimants, including

8   professionals, would be paid in full once such claims were allowed.

9       WZTS subsequently prepared and, on April 3, 2024, filed a further amendment to the Plan

10  (Dkt. No. 161) to reflect an updated set of projection calculations and an updated liquidation

11  analysis. WZTS also prepared and filed the Debtor's motion to confirm the Plan (Dkt. No. 160).

12  On April 17, 2024, objections to confirmation were filed by Class Creditors (Dkt. No. 172) and the

13  Subchapter V Trustee (Dkt. No. 173). The Subchapter V Trustee argued the Plan should only be

14  confirmed if the Debtor increased payments to unsecured creditors over the life of the Plan by

15  approximately $178,000. WZTS prepared the reply brief to both objections (Dkt. No. 178).

16  Although the Debtor believed the Plan was confirmable and in conformity with the Bankruptcy

17  Code's requirement that it pay unsecured creditors its projected disposable income during the life of

18  the Plan, it nonetheless agreed to the Subchapter V Trustee's request, agreeing to pay more than its

19  projected disposable income.

20      On May 20, 2024, the Court held a status conference regarding the upcoming plan

21  confirmation hearing. The Court instructed the Debtor and Class Creditors to file a statement of

22  position regarding two procedural issues: (i) whether witness declarations submitted in support of

23  confirmation could be admitted as evidence in lieu of live testimony, and (ii) whether issues not

24  previously raised in written briefing should be precluded from being raised for the first time at the

25  confirmation hearing. WZTS researched and prepared the Debtor's statement of position and filed

26  that statement on May 21, 2024 (Dkt. No. 195).

27      Also, on May 21, 2024, the Thibeaults' filed their objections to the Proofs of Claim (Dkt.

28  Nos. 196 and 197). The Debtor joined in those objections (Dkt. Nos. 204 and 205).

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WTZS prepared for the confirmation hearing.  At the May 22, 2024 hearing, after lifting the automatic stay to permit the state court litigation to move forward, the Court continued the confirmation hearing to August 14, 2024, a date that would follow the then-scheduled start date of the trial in the Class Creditors' state court litigation against the Debtor.

WZTS, once again, worked with the Debtor and Marcum to prepare a further amended Plan given that the effective date of the Plan would be pushed back from the last iteration of the Plan and therefore the Debtor's projections and liquidation analysis required update.  On June 12, 2024, WZTS filed the Debtor's Second Amended Plan (Dkt. No. 224) as well as an amended ballot summary (Dkt. No. 226).[3]

On July 2, 2024, the Debtor filed its application to employ Garofolo & Ramsdell ("G&R") as its special litigation counsel in the state court litigation (Dkt No. 237).  G&R was already representing the Thibeaults in the Class Creditors' litigation and the Debtor determined it made sense from a cost, timing and efficiency standpoint, for G&R to represent the Debtor as well.  The Class Creditors opposed the G&R application. On July 17, 2024, the Court heard and denied the application, concluding that G&R was conflicted due to its representation of the Thibeaults, whose interests were not aligned with those of the Debtor in the state court litigation.  As the denial of the application left the Debtor without counsel in the state court litigation, and the Debtor would need time to find itself new counsel, the Debtor expected that the August 12, 2024 start date of the trial would be kicked to a later date. The Court determined to take the Debtor's Second Amended Plan

---

[3] Although Class Creditors suggest that the substantial fees were incurred by WZTS due to drafting errors in the Plan, that is not the case.  Plans routinely contain drafting errors.  Those drafting errors typically take little time to correct, as was the case here.  The issues that took most of WZTS's time were the updates and changes that had to be made to the projections and liquidation analyses attached to each iteration of the Plan.  Most of the changes to the projections were the result of changes in the Debtor's customer base (the loss of certain customers and acquisition of others), changes in administrative expenses that continued to increase with the passage of time and ongoing fights with Class Creditors, and the Debtor's eventual agreement to increase distributions to unsecured creditors to amounts above its projected disposable income. The Debtor's modeling has been very detailed and has consistently attempted to account for as much information as has been available to the Debtor and its financial advisor.  Any missed detail could result in material changes in the projections (as well as the liquidation analysis).

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

off calendar pending the outcome of the state court litigation and the liquidation of Class Creditors' claims.[4]

## II.    RESPONSES TO SPECIFIC COMPLAINTS OF CLASS CREDITORS

### A.    WZTS is Entitled to Compensation for the Time Spent on the Second Amended Plan After May 22, 2024.

Class Creditors maintain that, as a result of the Court's lifting of the stay to allow their litigation against the Debtor to move forward in the state court (a result for which they have consistently sought and advocated), the time WZTS thereafter spent in connection with the Plan was neither necessary or beneficial to the estate and should not be compensated. Objection, 3:26-4:7. WZTS disagrees.

At the May 22, 2024 hearing, the Court continued the confirmation hearing to August 14, 2024.  The Court instructed the Debtor to file its Second Amended Plan, a redline of the Plan and an amended ballot summary by June 12, 2024. WZTS worked with the Debtor and its financial advisor to do as the Court instructed.  During that time, the Debtor, Marcum and WZTS worked closely with one another to further hone and update the projections and the liquidation analysis.  WZTS included the Subchapter V Trustee in the proposed revisions to the Plan.

All WZTS's services here were for the benefit of the estate. Any suggestion to the contrary is unsupported by fact and law.

### B.    Plan Drafting Errors Did Not Cause the Increased Fees of Which Class Creditors Complain

Class Creditors suggest that drafting errors in the Plan, namely language mistakenly included in the Disputed Claims and Claims Reserve provision in the Plan, somehow caused a substantial increase in WZTS's fees. Objection, 4:8-20. Once again, this just is not true. The fix to the Disputed Claims and Claims Reserve provision (Article 10.1 of the Plan) was a very simple one that did not take material time. As noted above, plans routinely contain minor drafting issues such as this which

---

[4] By order entered by the Court on September 6, 2024 (Dkt. No. 285), the Debtor employed the firm of Julander Brown & Bollard LLP ("JBB") as its special litigation counsel in the state court litigation. WZTS understands that trial in that litigation is now set to commence on February 10, 2025.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

1  are subsequently corrected or require modification. The time that WZTS spent after May 22, 2024

2  related largely to updating to the Plan, including the making of additional disclosures, working

3  closely with the Debtor and Marcum in updating projections and the Debtor's liquidation analysis

4  and drafting the Second Amended Plan to reflect such updates.

5       Class Creditors' objections to the Plan and the pressure brought upon the Debtor to increase

6  unsecured creditor distributions are among the most significant reasons changes to the Plan that were

7  made.  It is worth noting that nowhere do Class Creditors identify the amount of the "increased fees"

8  to which they are now objecting.  Instead, they leave it to the Debtor and the Court to guess.

9       **C.    Fees for Work Performed in Connection With G&R's Employment Application**

10      Class Creditors complain that "a large number of entries in the Application seek

11  compensation for work seeking to approve [G&R] as special counsel." Objection, 4:23-25.

12      The Court denied G&R's employment.  Although WZTS does not agree with the Court's

13  conclusions regarding G&R having a potential, if not actual, conflict due to its ongoing

14  representation of the Thibeaults in the state court litigation, WZTS respects and has not challenged

15  the Court's decision.

16      Consequently, WZTS agrees to reduce its request for fees by the amount of fees incurred in

17  connection with the Debtor's seeking G&R's employment.  Based upon WZTS's review of the

18  Application, WZTS believes its professionals spent a total of 30.3 hours of time and incurred total

19  fees of $13,510.50 in connection with G&R's employment application, as set forth below:

| Professional | Hours | Rate | Amount |
|---|---|---|---|
| Daniel Weintraub | .9 | $695 | $625.50 |
| David Zolkin | 13.5 | $650 | $8,775.00 |
| James Selth | .3 | $585 | $175.50 |
| Derrick Talerico | .1 | $595 | $59.50 |
| Martha Araki | 15.5 | $250 | $3,875 |
| Totals: | 30.3 | | $13,510.50 |

WZTS, thus, will reduce its total fee request by $13,510.50.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-10-
DEBTOR'S REPLY TO CLASS CREDITORS' OBJECTIONS TO FEE APPLICATION

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

**D.      Fees for Work in Connection with JBB's Employment is Fully Compensable**

WZTS rejects Class Creditors' contention that the time it spent in connection with JBB's employment application should not be compensable.  JBB's employment was approved by the Court by order entered on September 6, 2024 (Dkt. No. 285).  That order was entered after JBB fully disclosed all of its connections to the Debtor and the bankruptcy estate in its employment application (Dkt. No. 274).  JBB represented that it had no interest, and did not represent any interest, adverse to the Debtor or the bankruptcy estate. Thus, there is no basis upon which WZTS's fees for work performed in respect of JBB's employment should be disallowed.

As counsel for Class Creditors are well aware, JBB does not have any conflict of interest in its representation of the Debtor.  On October 1, 2024, the day **before** Class Creditors filed the Objection, at a hearing in the state court at which they were present, JBB unequivocally represented that it does not and will not represent any members of the Class Creditors group.[5]  It is remarkable that Class Creditors failed to disclose as much to this Court while accusing JBB and WZTS of "egregious conduct" that did not occur.  Objection, 5:9-11.

**E.      WZTS's Work Should Be Fully Compensable**

The very point of interim fee applications is to allow estate professionals to be compensated prior to the confirmation and effective date of a plan and the end of a bankruptcy case.  Bankruptcy Code § 331 allows professionals employed under section 327 to apply to the bankruptcy court for compensation during the pendency of the bankruptcy case so that they do not have to wait for a final fee application to receive any payment. Section 331 "provides financial relief to court-appointed officers engaged in protracted bankruptcy litigation, so that these officers do not have to wait for what may be years before receiving compensation." *In re Strand*, 375 F.3d 854, 858 (9th Cir. 2004).

Although the Plan has not been confirmed, as stated above, the Debtor and WZTS believe that the sole issue that remains before the Debtor can proceed with plan confirmation is the amount of the Class Creditors' claims against the Debtor.  The Debtor is ready to proceed with confirmation

---

[5] Class Creditors filed a separate objection to JBB' first interim fee application, in which they also claim that JBB is conflicted (Dkt. No. 300).  JBB's reply brief, which is being contemporaneously filed with this Reply, fully addresses Class Creditors' false contention.

promptly following the liquidation of those claims.  If the Court was to permit confirmation to move forward ahead of their liquidation, the Debtor would be ready to proceed to confirmation at that time.

WZTS fees in this Case have been reasonable and necessary in a case that has been contentious.  As discussed above, the fees sought in the Application do not threaten the existence of the Debtor because none of WZTS or the other professionals have requested payment of more than $170,000, collectively, plus monthly payments of $15,000 thereafter, all to be divided among their allowed professional fee and expense claims on a *pro rata* basis

## III.    CONCLUSION

For all of the foregoing reasons, the Debtor requests the Application be approved, subject to a reduction of $13,510.50 in G&R employment time (as described above), and that the  Court (i) approve and allow on an interim basis, 80% of the compensation ($286,101.20 after deduction of $13,510.50 from the total) and 100% of the expenses incurred by WZTS during the Application Period, (ii) approve the previous application by WZTS of the $25,223.00 retainer balance as of the Petition Date against the fees and expenses that are allowed, (iii) authorize and direct the Debtor to pay to WZTS and the other professionals that filed interim fee applications (a) promptly following the entry of one or more interim orders allowing such professionals' fees and expenses, $170,000, to be shared ratably among all such professionals based upon their allowed fees and expenses and (b) commencing on the fifteenth day of the first month following the date on which such interim fee orders are entered, $15,000 a month, to be shared ratably among such professionals, with such monthly payments to continue until the fees and expenses allowed pursuant to the Court's interim fee order(s) have been paid in full or until there is a further order of the Court directing otherwise.

Dated:  October 9, 2024          **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**


By   *David B. Zolkin*
       Daniel J. Weintraub
       David B. Zolkin

       General Bankruptcy Counsel for
       Chapter 11 Debtor and Debtor in Possession,
       KOMBU KITCHEN SF, LLC, dba NIBLL

# EXHIBIT 1

# Proof of Claim 25*

*Proof of Claim 25 downloaded from the Court's website is a "live" form that was not flattened by the creditors prior to filing; the copy attached has been flattened pursuant to the Court's Local Rules and the Central Guide for filing as an exhibit to Reply.

**EXHIBIT 1 - Page 13**

| Fill in this information to identify the case: |
| --- |

Debtor 1 _____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: Central District of California

Case number _____

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Name of the current creditor (the person or entity to be paid for this claim) _____

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Name _____ | Name _____ |
| Number      Street | Number      Street |
| City            State        ZIP Code | City            State        ZIP Code |
| Contact phone _____ | Contact phone _____ |
| Contact email _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM  /  DD  /  YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes.  Who made the earlier filing? _____

**Part 2:**     **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____ |

7. **How much is the claim?**     $_____. **Does this amount include interest or other charges?**

   ☐ No

   ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   _____

9. **Is all or part of the claim secured?**

   ☐ No

   ☐ Yes.  The claim is secured by a lien on property.

   **Nature of property:**

   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

   ☐ Motor vehicle

   ☐ Other. Describe:     _____

   **Basis for perfection:**     _____

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:**                          $_____

   **Amount of the claim that is secured:**        $_____

   **Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:**     $_____

   **Annual Interest Rate** (when case was filed)_____%

   ☐ Fixed

   ☐ Variable

10. **Is this claim based on a lease?**

    ☐ No

    ☐ Yes. **Amount necessary to cure any default as of the date of the petition.**     $_____

11. **Is this claim subject to a right of setoff?**

    ☐ No

    ☐ Yes. Identify the property: _____

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☐ No | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

**Part 3:**    **Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  _____
                     MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name     _____
            First name         Middle name         Last name

Title     _____

Company  _____
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  _____
            Number       Street

         _____
            City                    State      ZIP Code

Contact phone  _____      Email  _____

---

| **Print** | **Save As...** | **Add Attachment** | **Reset** |
|---|---|---|---|

Official Form 410                    **Proof of Claim**

EXHIBIT 1 - Page 16
page 3

|  |  | BOH |  | FOH |
|---|---|---|---|---|
| Rest Wages | $ | 416,220.28 | $ | 294,183.84 |
| Meal Wages | $ | 291,846.27 | $ | 214,597.59 |
| 226 | $ | 202,231.60 | $ | 151,150.00 |
| 203 | $ | 643,543.40 | $ | 546,401.20 |
| PAGA 203/256/1197.1 | $ | 643,543.40 | $ | 546,401.20 |
| 226.3 | $ | 2,229,134.91 | $ | 1,616,250.00 |
| 558 | $ | 209,617.99 | $ | 151,150.00 |
| 210 | $ | 419,235.98 | $ | 302,300.00 |
| Fees | $ | 899,765.00 | $ | 1,230,956.00 |
| Costs | $ | 7,300.00 | $ | 14,630.76 |
| Totals | $ | 5,962,438.82 | $ | 5,068,020.59 |
| LC 2802 | $ | - | $ | 67,000.00 |
| **TOTAL** | **$** | **5,962,438.82** | **$** | **5,135,020.59** |

EXHIBIT 1 - Page 17

# EXHIBIT 2

# Proof of Claim 26

**EXHIBIT 2 - Page 18**

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

| | |
|---|---|
| Debtor 1 | Kombu Kitchen SF, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:23-bk-17276-S |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

---

### Part 1:   Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | Maria De Jesus Vergara et al., the Certified Class, & Class Counsel Mallison & Martinez |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |

| | | |
|---|---|---|
| 2. | Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes. From whom? _____ |

| | | |
|---|---|---|
| 3. | Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |

| Where should notices | Where should payments |
|---|---|
| Maria De Jesus Vergara <br> Name | Name |
| 1939 Harrison Street Suite 730 <br> Number       Street | Number       Street |
| Oakland            CA          94612 <br> City                 State            ZIP Code | City                 State            ZIP Code |
| Contact phone (510) 832–9999 | Contact phone _____ |
| Contact email enotices@themmlawfirm.com | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

| | | |
|---|---|---|
| 4. | Does this claim amend one already filed? | ☑ No <br> ☐ Yes.  Claim number on court claims registry (if known) _____     Filed on ____ / ____ / ____ <br> MM / DD / YYYY |

| | | |
|---|---|---|
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes.  Who made the earlier filing? _____ |

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____ 5,962,438.82 . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Class/PAGA Claims/Fees & Costs (Alameda Case #RG20057449) _____

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12.** Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:                                                    **Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under
11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                                $_____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for
personal, family, or household use. 11 U.S.C. § 507(a)(7).            $_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the
bankruptcy petition is filed or the debtor's business ends, whichever is earlier.
11 U.S.C. § 507(a)(4).                                                $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.  $_____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/10/2023
                  MM / DD / YYYY

/s/ Cody A. Bolce
Signature

Print the name of the person who is completing and signing this claim:

Name    Cody            Alexander           Bolce
        First name      Middle name         Last name

Title   Attorney for Maria De Jesus Vergara and the Class

Company Mallison & Martinez
        Identify the corporate servicer as the company if the authorized agent is a servicer.

Address 1939 Harrison Street, Suite 730
        Number    Street
        Oakland                          CA        94612
        City                             State     ZIP Code

Contact phone (510) 832-9999        Email enotices@themmlawfirm.com

**Print**   **Save As...**   **Add Attachment**                **Reset**

Official Form 410                     Proof of Claim          EXHIBIT 2 - Page 21

Case 23-01273-SK Claim 26 Filed 10/09/24 Entered 10/09/24 17:29:27 Exhibit Damages Desc Analysis on Claim Page 24 of 35

# ATTACHMENT 1

EXHIBIT 2 - Page 22

|  |  | BOH |  | FOH |
|---|---|---|---|---|
| Rest Wages | $ | 416,220.28 | $ | 294,183.84 |
| Meal Wages | $ | 291,846.27 | $ | 214,597.59 |
| 226 | $ | 202,231.60 | $ | 151,150.00 |
| 203 | $ | 643,543.40 | $ | 546,401.20 |
| PAGA 203/256/1197.1 | $ | 643,543.40 | $ | 546,401.20 |
| 226.3 | $ | 2,229,134.91 | $ | 1,616,250.00 |
| 558 | $ | 209,617.99 | $ | 151,150.00 |
| 210 | $ | 419,235.98 | $ | 302,300.00 |
| Fees | $ | 899,765.00 | $ | 1,230,956.00 |
| Costs | $ | 7,300.00 | $ | 14,630.76 |
| Totals | $ | 5,962,438.82 | $ | 5,068,020.59 |
| LC 2802 | $ | - | $ | 67,000.00 |
| **TOTAL** | **$** | **5,962,438.82** | **$** | **5,135,020.59** |

EXHIBIT 2 - Page 23

# EXHIBIT 3

# MSC Statement

**EXHIBIT 3 - Page 24**

1

STAN S. MALLISON (Bar No. 184191)
    StanM@TheMMLawFirm.com
HECTOR R. MARTINEZ (Bar No. 206336)
    HectorM@TheMMLawFirm.com
CODY A. BOLCE (Bar No. 322725)
    CBolce@TheMMLawFirm.com
MALLISON & MARTINEZ
1939 Harrison Street, Suite 730
Oakland, California 94612-3547
Telephone: (510) 832-9999
Facsimile: (510) 832-1101

2

3

4

5

6

7

Attorneys for PLAINTIFFS Vergara, Ramos,
and Reyes, and the State of California, pursuant
to the Private Attorneys General Act

8

CAPTION CONTINUED ON NEXT PAGE

9

10

SUPERIOR COURT OF THE STATE OF CALIFORNIA

11

IN AND FOR THE COUNTY OF ALAMEDA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| MA DE JESUS VERGARA, PAHOLA RAMOS, and ROBERTO REYES, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br>vs.<br><br>KEVEN THIBEAULT; KRISTEN N. THIBEAULT; ALFONSO VENTURA; and DOES 1 through 20,<br><br>            Defendants.<br><br>AJA DE COUDREAUX, an individual; ZENA EVANS, an individua; DAEUN HWANG, an individual; and VERA LOPEZ, an individual; MYRIAH SIMS, an individual; and NICOLE VASSALLO, an individual;<br><br>            Plaintiffs,<br><br>vs.<br><br>KEVEN THIBEAULT, and individual; KRISTEN THIBEAULT, an individual; and DOES 1-20,<br><br>            Defendants. | Case No. RG20058323 (lead) (consolidated with RG20057449)<br><br>**AMENDED JOINT MANDATORY SETTLEMENT CONFERENCE STATEMENT**<br><br>**Date: April 16, 2024**<br>**Time: 9:00 AM**<br>**Dept: 301** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ILYA FILMUS (SBN: 251512)
PAUL PFEILSCHIEFTER (SBN: 301463)
1020 Aileen Street
Lafayette, CA 94549
Telephone: (925) 732-1188
Facsimile: (925) 732-1189
ifilmus@infinitylawca.com
ppfeilschiefter@infinitylawca.com

Attorneys for Plaintiffs and the State of California
Pursuant to the Private Attorneys General Act

On behalf of themselves, as representatives of the certified classes, and as Private Attorneys General for the State of California, plaintiffs in Case No. RG20057449 ("Vergara Matter"), Ma De Jesus Vergara, Pahola Ramos and Roberto Reyes, along with, plaintiffs in Case No. RG20058323 ("Coudreaux Matter"), Aja De Coudreaux, Zena Evans, Daeun Hwang, Vera Lopez, Myriah Sims, and Nicole Vassallo, submit this Joint Mandatory Settlement Conference Statement in advance of the Mandatory Settlement Conference scheduled for April 16, 2024.

*All representations and allegations herein apply only to the individual defendants, Keven and Kristin Thibeault. Nothing herein is intended to violate the automatic stay that applies to Kombu Kitchen SF, LLC (dba NYBLL) and should not be construed as such.*

**I.      Summary of all liability facts and issues**

This case stems from Defendants' multiple wage and hour violations, including 1) failing to provide timely and complete 30-minute meal periods (no, short, and late), 2) failing to provide rest periods, and 3) failing to compensate employees for necessary business expenses.[1]

**a.      Failure to Provide Compliant Meal Periods (Vergara & Coudreaux Matters)**

*Back of House (Vergara Matter) Facts*[2]

Due to the high-pressure work environment, kitchen employees were often required to take late or interrupted meal periods or skip them altogether. Meal periods were allotted at different times depending on how busy the kitchen was. Additionally, while on meal periods, kitchen staff was asked to perform work (i.e. tend cooking food). Because there was no break area on-site, kitchen staff would eat their meals standing at or near their work stations. Employees were not paid meal period premiums for late, short or interrupted meal periods.

*Concierge (Coudreaux Matter) Facts*

---

[1] The Court certified classes for failure to provide meal periods for both cases (i.e., Case No. RG20058323 and RG200574491). The Court also certified subclasses in Case No. RG20058323, the Coudreaux Matter, for 1) Failure to Provide Rest Periods; and 2) Failure to Indemnify for Necessary Business Expenditures in Violation of Labor Code §2802. Facts are provided herein according to these certified classes.

[2] Plaintiffs in both matters will attend the Settlement Conference ready and able to provide admissible evidence in support of each of the facts stated herein.

1    For the concierge employees, there simply were no lawful meal periods allowed. Concierge

2   employees began each shift at around 9:00 AM at NYBLL's headquarters, where they prepared for

3   the daily trip to NYBLL's clients by loading a NYBLL vehicle. Once the NYBLL vehicle was loaded

4   and ready with the day's supplies, employees then travelled to one of NYBLL's client sites where

5   they were to set up for the daily lunch service, which was staffed by either one or two concierge

6   employees. Lunch service ran from approximately noon until 1:00 PM, depending on the client, at

7   which time concierge employees were required to break down the food service area and prepare for

8   the trip back to NYBLL headquarters. Once back at NYBLL headquarters, employees unloaded the

9   supplies from the NYBLL vehicle and put away those supplies—including disposing of food that

10   was not consumed at the client site. A typical day ended between 2:00 to 4:00 PM, depending on the

11   client's needs. Concierge employees were required to be on the ready and available at all times

12   throughout their shifts for purposes of both the NYBLL client demands and for NYBLL managerial

13   reasons. No time was allowed for concierge employees to take a meal period during which they were

14   fully relieved of their duties.

15    ***Common Facts to Each Matter***

16    The failure to provide missed meal periods is documented in detail in the time records

17   analyzed by Plaintiffs' expert Aaron Woolfson. Mr. Woolfson determined the following violation

18   rates:

|                         | **Count** | **Percentage** |
|-------------------------|-----------|----------------|
| Shifts >5 Hours         | 19834     |                |
| Late Meal               | 6630      | 33.43%         |
| Short Meal              | 2760      | 13.92%         |
| Missed Meal             | 8603      | 43.38%         |
| No Second Meal          | 529       | 2.67%          |
| Deduplicated Violations | 15950     | 80.42%         |

24    **b.    Failure to Provide Rest Periods (Coudreaux Matter)**

25    Similar to meal periods, concierge employees were not allowed rest periods while on duty at

26   NYBLL's clients, as they were never fully relieved of their duties. NYBLL required all concierge

27   employees to be reachable throughout the day and at all times on their personal cell phones and

28   required employees to use various applications downloaded to their personal phones throughout their

- 4 -

shift. At any time, concierge employees were required to be ready to respond to client demands while on-site. NYBLL used various technology to track and monitor their employees throughout the day, including their location and whereabouts.

NYBLL allowed no food consumption during a shift and employees could be disciplined for eating food they brought from home. NYBLL did not allow its employees to consume food prepared for clients. Concierge employees were discouraged from using the restroom while at the client's worksite.

### c. Failure to Indemnify for Necessary Business Expenses (Coudreaux Matter)

Defendants required that concierge employees incur work-related expenses without reimbursement. Specifically, concierge staff was required to purchase and use their personal cell phones for work purposes.[3] Plaintiffs seek recovery for these expenditures. (See, e.g., *Castro v. ABM*, a cell phone reimbursement case before the Northern District of California, wherein the Court found that Plaintiffs' damage model which provided for approximately $30/month in cell phone usage reimbursements, was "equal to the minimum available cost of a cell phone in California […]."[4]

### II. Hearing date for any dispositive motion

No dispositive motions are anticipated before trial.

### III. Summary of remaining discovery

The parties continue to meet and confer over all outstanding discovery disputes and expect that any disputes will be resolved before trial.

### IV. List of all economic damages claimed

| Liability Theory | Exposure |
|---|---|
| Meal Period (premiums) - Class | $366,869 |
| Rest Period (premiums) - Class | $512,977 |
| Reimbursement - Class | $13,694 |
| Waiting Time (§203) – Class | $1,218,533 |
| Wage Statement (§226) – Class | $283,300 |

[3] A 2018 Oxford Economics study analyzed companies' practices with respect to employee mobile use and its associated costs. Plaintiffs can provide a copy of this study at the conference if necessary. The study found that companies which ask their employees to bring their own devices (BYOD) and provide a stipend to cover a portion of the device cost and the monthly service bill paid an average of $36 per month to their employees for this stipend.

[4] Plaintiffs for the Coudreaux Matter will be prepared to provide copies of Castro v. ABM Class Cert. Order Ex. F, at 6 n.5; Castro v. ABM Expert Decl. ISO Class Cert. Ex. G, at 8 n.16.

- 5 -

| Waiting Time – PAGA | $1,218,533 |
| Wage Statement – PAGA | $822,250 |
| Pay Period Waiting Time – PAGA (§210) | $576,100 |
| §558 Penalties - PAGA | $288,050 |
| §1197.1 Penalties - PAGA | $576,100 |
| Total | $5,876,406 |
| | |

## V.    Current good faith settlement offer or demand of each party

Defendants offered $600,000 for a global settlement in September 2023, reduced that amount to $100,000 at the last settlement conference, and now offer $25,000.00 to settle both cases on behalf of both remaining defendants.

Plaintiffs are prepared to reopen negotiations at $1,400,000.00. This is a reduction of $100,000.00 from our last offer.

## VI.    Name, date, and description of each alternative dispute resolution neutral's attempt to resolve this case

The parties attended two private mediations with now retired Mediator Justice Vartebedian, on April 7, 2021, a second mediation on October 24, 2022, and a prior settlement conference on September 25, 2023. Defendants did not come to either mediation or to the prior settlement conference prepared to resolve the matter in good faith, instead electing to file bankruptcy for the Kombu entity while continuing to litigate this matter.

Dated: April 12, 2024                **MALLISON & MARTINEZ**

By: _____
    Stan S. Mallison
    Hector R. Martinez
    Cody A. Bolce
    Attorney for Plaintiffs

Dated: April 12, 2024                **INFINITY LAW GROUP LLP**

By: _____
    Paul K. Pfeilschiefter
    Attorneys for Coudreaux Plaintiffs

- 6 -

**PROOF OF SERVICE**

I am employed in the County of Alameda, State of California. I am over the age of 18 and not a party to the within action; my business address is 1939 Harrison Street, Suite 730, Oakland, California 94612.

On April 12, 2024, I served the documents described as:

- **Plaintiffs' MSC Statement**

on *Interested Parties at the following* addresses:

Craig P. Ramsdell
Garofolo & Ramsdell, LLP
3443 Golden Gate Way, Suite H
Lafayette, CA 94549
Email: cramsdell@garofololaw.com

Attorney for Defendants Kristin Thibeault; and
Kevin Thibeault.

**[X]   BY U.S. MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Oakland, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

**[  ] BY E-Mail:** By transmitting the foregoing documents to the e-mail addresses listed above. The transmission was reported completed and without error.  The foregoing documents were emailed from darjona@themmlawfirm.com.

**[ X ] STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on April 12, 2024 at Oakland, California.

_____
Daniel Arjona

- 2 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
    11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **Reply to Class Creditors Joint Opposition of Class Creditors to First Interim Application of Weintraub Zolkin Talerico & Selth LLP for Approval of Compensation and Reimbursement of Expenses,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 9, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

    See attached NEF service list.

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  October 9, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Sandra R. Klein          (Via Priority Mail)
United States Bankruptcy Judge
255 E. Temple St., Suite 1582
Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 9, 2024 | Martha E. Araki | /s/ Martha E. Araki |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                 **F 9013-3.1.PROOF.SERVICE**

In re Kombu Kitchen SF LLC                                          **Case No. 2:23-bk-17276-SK**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Attorneys for Debtor Kombu Kitchen SF LLC: **Daniel J. Weintraub, David B. Zolkin, James R. Selth, Catherine Liu**: dweintraub@wztslaw.com; dzolkin@wztslaw.com; jselth@wztslaw.com; cliu@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com
- Subchapter V Trustee: **Mark Sharf**: mark@sharflaw.com; C188@ecfcbis.com; sharf1000@gmail.com; 2180473420@filings.docketbird.com
- Attorneys for American Express National Bank c/o Zwicker & Associates, P.C.: **Karen L. Belair**: kbelair@zwickerpc.com
- Attorneys for Creditors Maria de Jesus Vergara and Aja de Coudreaux, and Attorney Paul Pfeilschiefter: **Cody Alexander Bolce**: cbolce@themmlawfirm.com; enotices@themmlawfirm.com
- Interested Party/Courtesy NEF: **Todd S. Garan**: ch11ecf@aldridepite.com; TSG@ecf.inforuptcy.com; tgaran@aldridgepite.com
- Attorneys for Interested Party Sysco Corporation, Sysco San Francisco, Inc., and Newport Meat Northern California, Inc.: **Robert P. Goe, Brandon J. Iskander**: kmurphy@goeforlaw.com; rgoe@goeforlaw.com; goeforecf@gmail.com; biskander@goeforlaw.com
- Attorneys for Creditor AmTrust North America, Inc. on behalf of Wesco Insurance Company: **Alan Craig Hochheiser**: ahochheiser@mauricewutscher.com; arodriguez@mauricewutscher.com
- Attorneys for Creditors Aja de Coudreaux and Maria De Jesus Vergara, and Attorney Paul Pfeilschiefter: **Paul Pfeilschiefter**: paul.pfeilschiefter@workerrightsattorney.com
- Attorneys for Interested Parties Keven Thibeault and Kristen Thibeault: **Craig Ramsdell**: cramsdell@garofololaw.com
- Attorneys for Ally Bank c/o AIS Portfolio Services, LLC: **Amitkumar Sharma**: amit.sharma@aisinfo.com
- Attorneys for Creditor Wells Fargo Bank, N.A. dba Wells Fargo Auto: **Ashley Soto**: ashley.p.soto@wellsfargo.com
- Attorneys for Creditor Bi-Rite Restaurant Supply Co., Inc.: **Kaipo K.B. Young**: KYoung@BL-Plaw.com
- Attorneys for Creditor Night Heron Oakland, LLC: **A. David Youssefyeh**: david@adylaw.com
- US Trustee's Office: ustpregion16.la.ecf@usdoj.gov; **Ron Maroko**: ron.maroko@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                          **F 9013-3.1.PROOF.SERVICE**