1  David B. Zolkin – Bar #155410
   *dzolkin@wztslaw.com*

2  WEINTRAUB ZOLKIN TALERICO & SELTH LLP

3  11766 Wilshire Boulevard, Suite 730
   Los Angeles, CA 90025

4  Telephone: (310) 207-1494

5  General Bankruptcy Counsel to

6  Chapter 11 Debtor and Debtor in Possession,
   KOMBU KITCHEN SF LLC, dba NIBLL

7

8

9  **UNITED STATES BANKRUPTCY COURT**

10  **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

11  In re:                                   Case No. 2:23-bk-17276-BR

12  KOMBU KITCHEN SF LLC, dba NIBLL,          Chapter 11

13                                           Subchapter V

14          Debtor and Debtor In Possession.   **CASE STATUS REPORT**

15

16                                           Hearing:
                                             Date:      January 27, 2026

17                                           Time:      10:00 a.m.
                                             Courtroom: 1668

18                                                      255 East Temple St.
                                                        Los Angeles, CA 90012

19                                           Judge:     Hon. Barry Russell

20

21

22

23          **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY**

24  **JUDGE, MARK SHARF, SUBCHAPTER V TRUSTEE, PARTIES IN INTEREST AND THE**

25  **OFFICE OF THE UNITED STATES TRUSTEE:**

26          KOMBU KITCHEN SF, LLC dba NIBLL (the "Debtor"), the debtor and debtor-in

27  possession in this Chapter 11, Subchapter V case ("Bankruptcy Case" or "Case"), hereby submits

28  this Case status report to the Court.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

As the Court is aware, the Debtor's Case has been awaiting a ruling in two consolidated wage and hourly class action lawsuits commenced against the Debtor by former employees (collectively, the "Wage Class Claimants" or "Plaintiffs"), in the Alameda County Superior Court (the "State Court").  Those actions are identified as *Aja de Coudreaux, et. al., v. Kombu Kitchens SF, LLC (dba "NYBLL")*, et al., Case No. RG20058323 and *Ma De Jesus Vergara V. Kombu Kitchen SF, LLC (dba "NYBLL")*, Case No. RG20057449 (collectively, the "State Court Actions").  Trial commenced on February 10, 2025, and ended on April 4, 2025.  Post-trial briefing was subsequently completed.  The State Court has issued a tentative ruling, indicating a total aggregate judgment against the Debtor of $2,188,381.10, plus an additional $200 each for the named plaintiffs in the Vergara action.  A true and correct copy of the State Court tentative is attached hereto as **Exhibit 1**.  The Debtor filed its response to the tentative on January 12, 2026, and is hopeful that the response will result in a reduction of the judgment amount.  A post-tentative statement of decision hearing has been scheduled in the State Court Action for January 20, 2026 at 10:00 a.m.  Even if the tentative ruling is not further reduced, the total tentative judgment against the Debtor is less than one-fifth of the $11.1 million in claims asserted by the Wage Clas Claimants in their vastly overstated and unsupported proofs of claim in this Case.

Once the State Court issues its final ruling and the Bankruptcy Court subsequently ratifies that decision, the Debtor will be in a position to proceed with a further amended Plan of Reorganization, which like the previously filed plans, will rely upon the Debtor's net disposable income over a period of three to five years to pay its creditors.

Since the last Status Conference, the Debtor has continued to operate its business and maintain its compliance as a subchapter V debtor.  It has filed its Small Business Monthly Operating Reports [Dkts. 372 and 383] and filed its monthly Declarations regarding Post-Petition Financing on an Unsecured Basis [Dkts. 373 and 382].  The Debtor has also determined that it is in the best interests of the Case and the estate, that it close the kitchen premises and reject the lease for the South San Francisco location.  A motion to reject the lease will be filed in the coming days with the Court.

/ / /

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

The Debtor respectfully requests that the Court set a further case status conference for mid to late April, 2026, by which date the Debtor hopes that the State Court will have issued its final ruling and the Debtor will have been able to file its Plan.

Respectfully submitted,

Dated:  January 13, 2026                **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

By  */s/ David B. Zolkin*
    David Zolkin

    General Bankruptcy Counsel for
    Chapter 11 Debtor and Debtor in Possession,
    KOMBU KITCHEN SF, LLC, dba NIBLL

# EXHIBIT 1

**EXHIBIT 1 - Page 4**

FILED
Superior Court of California
County of Alameda

12/31/2025

Chad Finke, Executive Officer / Clerk of the Court
By: _____ Deputy
T. Smith

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**          Dept. No. 23

Date: 12/31/2025                              Hon. MICHAEL MARKMAN, Judge

| | |
|---|---|
| AJA DE COUDREAUX, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KOMBU KITCHEN SF, LLC (dba NYBILL), KEVÉN  THIBEAULT, and KRISTEN THIBEAULT, <br><br> Defendants. | Case Nos. RG20058323 (LEAD CASE) CONSOLIDATED WITH RG20057449 <br><br> **TENTATIVE STATEMENT OF DECISION AFTER BENCH TRIAL** |

I.      **PRELIMINARY STATEMENT**

On February 10, 13, March 3, 4-6, 13-14, 17, 19-20, 26-27, and April 2-3, 2025, the Court held a bench trial on Plaintiffs' various wage and hour claims, as well as claims under the Private Attorneys General Act ("PAGA") and the Unfair Competition Law ("UCL").  Paul K. Pfeilschiefter and Sloan C. Bailey represented the De Coudreaux plaintiffs, Stan S. Mallison, Hector R. Martinez, and Cody A. Bolce represented the Vergara plaintiffs, M. Adam Tate represented Kombu Kitchen SF, LLC (doing business as "Nybll") (hereinafter "Kombu Kitchen"), and Craig P. Ramsdell and Joseph A. Garofolo represented the Individual Defendants, Keven Thibeault and Kristen Thibeault.  After an extended wait for trial transcripts, the parties submitted post-trial briefing on their stipulated schedule.  Plaintiffs filed the final reply brief on October 2, 2025, and the Court took the matter under submission.

This is the Court's tentative decision and preliminary statement of decision, subject to a party's timely objection under California Rule of Court 3.1590(g).  It will be the Statement of Decision of the Court unless, within fifteen days (plus five days for mailing) a party files and serves a document that specifies controverted issues or makes proposals not covered in the tentative decision (as provided by Rule 3.1590(c) of the California Rules of Court).

1

EXHIBIT 1 - Page 5

II.    **ORDERS**

The court finds:

1.  The *De Coudreaux* plaintiffs, representing Kombu Kitchen's "concierge" employees, proved (a) meal period violations and (b) rest break violations by Kombu Kitchen at its Oakland location under Labor Code sections 226.7 and 512, by at least a preponderance of the evidence (further references in this Statement of Decision to statutory sections are to the Labor Code unless otherwise noted).

2.  The end date for the meal and rest break class period for the concierge employees is March of 2020.  The evidence at trial established that Kombu Kitchen terminated the vast majority (if not all) of the "concierge" employees in March 2020 as a result of the impact of the Covid-19 pandemic.  The evidence further established that when Kombu Kitchen began re-hiring "concierge" employees it followed the Labor Code's requirements as to meal and rest breaks.

3.  The *Vergara* plaintiffs, representing Kombu Kitchen's "back of the house" kitchen staff at the Oakland location, proved by at least a preponderance of the evidence interrupted meal period violations by Kombu Kitchen at its Oakland location under sections 226.7 and 512.

4.  Judge Seligman did not certify a class as to rest break violations for the "back of the house" employees.  The court finds that individual claims for rest break violations were not proven by at least a preponderance of the evidence.

5.  The *De Coudreaux* plaintiffs proved individual claims for expense reimbursement violations under Labor Code section 2802, with regard to cellphone use for work by Kombu Kitchen's concierge employees at its Oakland location, (with regard to the use of at least the Tookan and 7shifts apps), by at least a preponderance of the evidence.

6.  The individual *Vergara* plaintiffs proved their individual claims for expense reimbursement violations with regard to the use of smartphones (requiring use of the 7shifts app) and the purchase of non-slip shoes for use in the kitchen.

7.  The court finds that neither the *De Coudreaux* nor the *Vergara* plaintiffs proved their claims against Keven and Kristen Thibeault individually, for purposes of section 558.1, by at least a preponderance of the evidence.

**EXHIBIT 1 - Page 6**

8. The court finds that Plaintiffs did not prove meal or rest break violations for purposes of putative class members who worked at Kombu Kitchen locations outside of the Oakland location.

With regard to damages, the court finds Plaintiffs have proven by at least a preponderance of the evidence:

1. $284,684 for meal break violations as to the class of Oakland-based concierge employees and the class of back of the house employees during the class period. This figure includes 7% interest from the date of occurrence through the start of trial.

2. $190,628.60 for rest break violations as to the class of Oakland-based concierge employees during the class period. This figure includes 7% interest from the date of occurrence through the start of trial.

3. $3,664.50 for expense reimbursement claims as to the Oakland-based concierge employees. $200 each for the named plaintiffs in the Vergara case.

4. Waiting time penalties of $868,965 under section 203; $65,400 under section 226 (wage statements); $260,000 under section 226.3 (PAGA penalties for inaccurate wage statements); and section 558 (combined to avoid inappropriate stacking); and $515,039 in further penalties under sections 256, 2699, and 1197.1 (reduced to avoid inappropriate stacking).

5. The total aggregate judgment is therefore $2,188,381.10, plus an additional $200 each for the named plaintiffs in the *Vergara* matter.

The court sets a case management conference for February 17, 2026 at 10am in Department 1 to finalize the Statement of Decision and to enter judgment. At least five court days prior to the CMC the parties are to submit a proposed form of judgment. They will need to incorporate a proposal for distribution of the class-based award above to the applicable class members. If the parties are unable to reach agreement concerning the proposed form of judgment then each side may submit a proposal. If further motion practice is contemplated with regard to attorney's fees the court contemplates the results of that motion practice would be incorporated into an amended judgment at the appropriate time.

### III.   <u>OVERVIEW</u>

This action consists of two sets of claims made in two complaints – *De Coudreaux v. Kombu Kitchen SF, LLC, et al.*, Case No. RG20058323 ("*De Coudreaux*"), and *Vergara v. Kombu Kitchen SF, LLC, et al.*, Case No. RG20057449 ("*Vergara*"). The court consolidated the *Condreaux* and *Vergara* cases for pretrial purposes and for trial.

EXHIBIT 1 - Page 7

### A. Kombu Kitchen's Business

Kombu Kitchen provided catering services for companies in northern and southern California and in the Boston metropolitan area. The claims at trial focused on the operations of its facility in Oakland, California. Plaintiffs did not put on evidence concerning Kombu Kitchen's operations elsewhere, except to the extent that Kombu Kitchen's HR policies, set out in its employee manual, generally applied across the company.

In summary, and as described at trial by multiple witnesses, including the individual defendants and several former employees, Kombu Kitchen's Oakland operation mostly served technology companies in San Francisco, though it also had clients in the East Bay and in San Jose. The company's "back of the house" staff, including cooks and others, prepared meals (oftentimes lunches) at its kitchen in Oakland. The company's "concierge" employees would typically load the food in cars or vans, take it to the office of Kombu Kitchen's clients, and set up the meal (e.g., as a buffet). The concierge employees sometimes worked alone and sometimes in groups of two, depending on the client.

The concierge would serve the meal to the tech client's employees (including by keeping an eye on the buffet service and responding to client requests). At the conclusion of meal service, the concierge employee would pack up or clean up leftovers and drive the equipment (e.g., food trays) back to Kombu Kitchen's Oakland facility and unload it. Occasionally, the service only required the concierge to be more of a delivery-person by just dropping off the food.

### B. Meal and Rest Breaks

The focus of the parties' dispute concerns meal and rest breaks. The court discusses below notable portions of the testimony and other evidence concerning breaks by concierge and by back of the house employees (it is not intended to be a comprehensive summary of all the evidence at trial).

Generally, the evidence reflects that the concierge employees did not receive meal or rest breaks except at the end of a shift, when staff would sometimes gather at the Kombu Kitchen facility where snacks or meals were usually available. Concierge employees testified that their only real "break" was while driving to or from a client, which was not a break at all.

Back of the house employees indicated that they generally received some form of meal break. (TT 3/3/25 at p. 103:24-26; 3/5/25 at p. 34:21-35:21; 3/27/25 at p. 26:16-27:12.) The primary complaint was that the meal breaks were short or interrupted.

EXHIBIT 1 - Page 8

One of the more significant disputes in the case concerning breaks for concierge employees concerned a document titled "Employee Policy for Client Interaction." (Exh. 68.) The client interaction policy began:

> As an employee of Kombu Kitchen SF LLC, dba Nybll, you represent our company and brand each and every time you are working at a client location. It is important to maintain a professional level of service 100% of the time you are interacting with our clients. You are considered to be interacting with a client the moment you leave the kitchen until you arrive back at the kitchen after service.

(Exh. 68.)

The client interaction policy set out requirements concerning personal appearance (e.g., wearing "Black non-slip work shoes"). It reminded employees to "adhere to all health department requirements ("long hair must be tied up in a ponytail"; "a hat or hair net must be utilized").

Regarding food and drink, the client interaction policy said:

> Employees are permitted to bring a water bottle to service. Consumption of water should happen out of the view of clients to the best of your ability and should be kept to a minimum. No food or beverages including water, coffee, tea, soda and any form of liquor shall be consumed on-site. This includes before service, during service, after service or taking a beverage for consumption off premises. In addition, no tasting of the food for "quality" shall be performed on-site by any Nybll employee.

(Id.)

Regarding "restroom breaks," the policy explained:

> Employees are to make all efforts to use the restroom prior to leaving for service. Any time an employee has to leave the floor for a restroom break the quality of the service we provide is lowered. Any emergency restroom break should be kept at a minimum.

(Id.)

The policy also restricted phone usage:

> Phones should only be used for business purposes while on site at a client location. The employee shall make all efforts to use the phone out of

EXHIBIT 1 - Page 9

client site [sic] for such reasons as parking validation, food level reports, items left in the kitchen and similar issues.  At no point should a phone be used for personal use while at service.

(Id.)

The individual defendants testified they were not aware of the client interaction policy until they saw it during the litigation.  It is unclear who drafted the policy.  It is also unclear exactly who received it.  At least 13 employees signed the acknowledgement on the policy, including plaintiff Aja De Coudreaux (whose signature appears on Exhibit 68 itself).

A search of Kombu Kitchen's files did not turn up other employee signatures.  (TT 4/2/25 at p. 38:1-39:7.)  The signatures are all dated between February and September of 2019.  From this, Defendants ask the court to infer that only 13 people were potentially impacted by the policy.  Plaintiffs present testimony suggesting that the client interaction policy was indeed company policy and that it was generally enforced by company managers.

In January 2020, concierge employee Zena Evans left Kombu Kitchen.  As she left the company, she sent an email to a number of Kombu Kitchen managers and to Kristen and Keven Thibeault complaining about the company's policies concerning meal and rest breaks.  (Exh. 61.) Her complaints particularly target the client interaction policy; it is safe to say she was offended by and angry about its restrictions.

After receiving the email, the individual defendants initiated an investigation concerning break policies and manager enforcement.  This included reviewing video of Ms. Evans in the break room at the Oakland facility, which they say caused the individual defendants to believe Evans' complaints about missed breaks were unfounded or over-stated.  The company did, however, proceed to obtain written break waivers from concierge employees in the aftermath of the Evans email.  The company also held meetings in late January or early February 2020 to instruct employees on the importance of taking meal breaks.

### C.  Business Expenses for Employees

Kombu Kitchen relied on various smartphone applications to interact with its concierge employees.  The company asked its concierge employees to use an app called "Tookan" for purposes of showing they were, in fact, providing the required services to clients (e.g., by uploading photos of a set-up food service and of clean-up afterwards).  The company asked many concierge employees to sign a "Tookan Policy and Procedures" document.  (Exh. 8.)  They used a payroll app to handle much of the wage statement paperwork.  The company used an app called "7shifts" for scheduling.

EXHIBIT 1 - Page 10

Managers communicated with concierge employees via text messages throughout the day.

At least one witness, Zina Evans, testified she recalled having to use an app called "Keep Trucking" (see Exh. 48), but she could not recall what it was used for. Lisa Etling, a Kombu Kitchen client who worked for Keep Trucking, explained in her testimony that the app was used for fleet tracking, and so was likely used to track concierge employees driving to and from a client site.

The individual defendants testified that the company made company smartphones available to concierge employees who asked for one. Testifying concierge employees, however, testified that their managers had them load the necessary apps on their own personal smartphones. It did not appear that the testifying concierge employees were aware of the availability of company smartphones. Defendants presented no documentary evidence to corroborate the existence of company smartphones for use by concierge employees. The court finds the evidence does not support the availability of company smartphones as a defense to the reimbursement claims.

At least two back of the house witnesses, Ramos and Veraga, testified that the company required her to purchase cutlery for use in the kitchen. Kristen Thibeault testified that, to her knowledge, no back of the house employee had been asked to purchase knives or other cutlery for use at work. Plaintiffs did not present documentary evidence to support testimony that kitchen employees were asked to provide their own cutlery to use in the kitchen. As noted below, some testimony supports the conclusion that at least some back of the house employees used their personal phones to schedule or confirm shifts on the 7shifts app, and that at least some believed they needed to purchase non-slip shoes for use in the kitchen.

### D. The Covid-19 Pandemic and the End of the Class Period

In March of 2020, the Covid-19 pandemic hit Kombu Kitchen's operations hard. Its business dried up virtually overnight. By the end of that month, Kombu Kitchen had terminated all of its concierge employees and substantially all of its back of the house staff. It only began resuming operations many months later. Plaintiffs did not present evidence concerning any alleged meal or rest break violations, or failures to reimburse expenses, dating after March 2020.

### E. Class Certification

In *Vergara*, the court (Judge Seligman) certified a subclass of "back of house" employees alleging claims relating to meal break violations of the Labor Code. In *De Coudreaux*, Judge Seligman certified subclasses of concierge employees as to meal

EXHIBIT 1 - Page 11

break, rest break, and reimbursement claims.  (12/14/22 Order in *Coudreaux*; 12/6/22 Order in *Vergara*.)  The class period commenced March 11, 2016.  (*Id.*)

The court determined at the time of trial that the class period would end as of March 2020, when the evidence establishes that substantially all of Kombu Kitchen's employees were terminated due to the Covid-19 pandemic.  Evidence concerning wage and hour violations dating after some employees were re-hired (or new employees were hired) was not the subject of testimony or other evidence at trial.

After class certification, Kombu Kitchen filed for bankruptcy.  (1/10/24 Notice of Bankruptcy Filing and Stay [*Vergara*]; 11/2/23 Notice of Stay [*Coudreaux*].)  Plaintiffs obtained a lift of the automatic stay in order to allow this case to move forward through trial.  (5/28/24 Notice of Lifting of Automatic Stay [*Coudreaux*].)

Defendants' various efforts to decertify the classes are the subject of multiple earlier orders (including July 17, 2024 and January 30, 2025).  The court also heard Defendants' motions for summary judgment and adjudication.  The court's prior orders provide further background concerning the case and trial.

IV.     **DISCUSSION**

A.  **The Meal Break Claims (Labor Code, §§ 226.7 & 512)**

California law mandates that an employer like Kombu Kitchen must provide regular meal and rest breaks.  The Labor Code provides in relevant part: "An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee."  (Labor Code, § 512, subd. (a).)  The break is both "a statutory as well as a wage order obligation."  (*Brinker Rest. Corp. v. Superior Court of San Diego County* (2012) 53 Cal.4th 1004, 1036-1037 (*Brinker*).)

During the meal break, "an employer must relieve the employee of all duty for the designated period, but need not ensure that the employee does no work."  (*Brinker, supra,* 53 Cal.4th at p. 1034.)  "The employer is not liable if the employee chooses to take a short or delayed meal period or no meal period at all. The employer is not required to police meal periods to make sure no work is performed. Instead, the employer's duty is to ensure that it provides the employee with bona fide relief from duty and that this is accurately reflected in the employer's time records. Otherwise, the employer must pay the employee premium wages for any noncompliant meal period."  (*Donohue v. AMN Services, LLC* (2018) 11 Cal.5th 58, 78.)  "If an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is

EXHIBIT 1 - Page 12

triggered. 'Employ' relates to what must transpire during the five-hour work period; it does not relate to what must transpire next." (*Brinker, supra,* 53 Cal.4th at p. 1039.)

What this means is that "[w]hen someone is suffered or permitted to work—i.e., employed—for five hours, an employer is put to a choice: it must (1) afford an off duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay." (*Brinker, supra,* 53 Cal.4th at p. 1039, citing Labor Code, § 226.7, subd. (b); Wage Order No. 5, subd. 11(A), (B).) "[B]ecause the defining characteristic of on duty meal periods is failing to relieve an employee of duty, not simply 'suffering or permitting' work to continue, it follows that off duty meal periods are similarly defined by actually relieving an employee of all duty: doing so transforms what follows into an off duty meal period, whether or not work continues." (*Brinker, supra,* 53 Cal.4th at pp. 1039-40.)

The timing of the meal break, to avoid triggering the premium wage requirement, is set by statute.  According to our Supreme Court, "Section 512 requires a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work."  (*Brinker, supra,* 53 Cal.4th at p. 1041.)

Plaintiffs have to show that he (1) "worked for [Kombu Kitchen] for one or more workdays for a period lasting longer than five hours; and (2) [Kombu Kitchen] did not provide [Plaintiffs] with the opportunity to take a timely uninterrupted meal break of at least 30 minutes for each five-hour period worked."  (CACI 2766A.)

Alternatively, under *Donohue*, Plaintiff could establish that Kombu Kitchen "did not keep accurate records of compliant meal breaks, or [Kombu Kitchen's] records show missed, shortened, or delayed meal breaks, meaning that "the court should find for Plaintiffs "unless [Kombu Kitchen] proves all of the following:

1. That Kombu Kitchen provided [Plaintiffs] a reasonable opportunity to take uninterrupted 30-minute meal breaks on time;

2. That [Kombu Kitchen] did not impede [Plaintiffs] from taking 30-minute meal breaks;

3. That [Kombu Kitchen] did not discourage [Plaintiffs] from taking 30-minute meal breaks;

4. That [Kombu Kitchen] relieves [Plaintiffs] of all duties during 30-minute meal breaks; and

9

EXHIBIT 1 - Page 13

5.  That [Kombu Kitchen] relinquished control over [Plaintiffs'] activities during 30-minute meal breaks, including not requiring the employee to stay on the premises."

(CACI 2766B; see CACI 2765.)  The court then has to "decide how many workdays [Kombu Kitchen] did not prove all of the above and … the amount of pay owed."  (CACI 2766B.)  Kombu Kitchen "must pay one additional hour of pay at [Plaintiffs'] regular rate of pay for each workday on which [Kombu Kitchen] did not prove all of the above." (*Ibid*.)

Defendants were "not required to police meal breaks, ensure that an employee takes a meal break, or ensure that an employee does no work during a meal break." (CACI 2765.)  As an affirmative defense, Defendants could attempt to prove that Plaintiffs and other class members waived their meal breaks.  Kombu Kitchen would need to show that (1) the employee "worked no more than six total hours in a workday; and (2) [the employee] and Kombu Kitchen freely, knowingly, and mutually consented to waiving the meal break of that workday."  (CACI 2770.)

Plaintiffs pursue liability based on the presumption described in *Donohue*.  In their view, the evidence reflects a substantial percentage of non-compliant meal periods, triggering "a rebuttable presumption of liability."  (*Donohue, supra*, 11 Cal.5th at p. 61.)

Plaintiffs rely primarily on the testimony of its expert, Aaron Woolfson, to evaluate the specifics of Kombu Kitchen's time and payroll records.  Woolfson has testified in a number of wage and hour cases, in which he created a database using payroll and time records and then used the data to test for various wage and hour violations.

Relying on the records produced by Kombu Kitchen (Trial Exh. 14 & Compendium Exh. 7), Woolfson testified that Kombu Kitchen's available time records reflect a high rate of short, late, and missed meal breaks.  Woolfson analyzed the available numbers using a SQL database and summarized the analysis in an Excel spreadsheet.

Trial Exhibit 78 was Woolfson's initial analysis at trial.  After Defendants identified multiple potential flaws in the data during trial, Woolfson returned with a slightly refined analysis admitted into evidence as Exhibit 81.

Based on Exhibit 78, Mr. Woolfson determined the records reflected 8,456 shifts with no meal period where a meal break was required by California law based on the length of the shift.  (Exh. 78, col. W.)  If the court understood the evidence correctly, this included 6,429 shifts over six hours with no meal break (col. Z), 498 shifts over ten hours without a second meal break, and 138 shifts over 12 hours without a second meal break (with the balance constituting shifts over five hours).  He concluded there were 6,606

EXHIBIT 1 - Page 14

shifts where meal periods were late (col. X), and 2,752 shifts where meal breaks were short (col. Y), for a total of 15,787 shifts where meal period premiums were required by not paid.  (TT 3/19/25 at p. 36:15-18.)  Plaintiffs' joint brief states the total is 15,777, but the court's effort to tie up the numbers added 10 shifts to the aggregate count (6,429 missing + 6,606 late + 2,752 short = 15,787 (not 15,777)).  This count includes both concierge and back of the house employees.

While there are flaws in Mr. Woolfson's analysis, as discussed below, the court concludes there is more than a reasonable basis to find that the rebuttable presumption under *Donohue* is triggered here for both concierge and back of the house employees. Measuring damages is made more difficult, however, as a result of flaws in Mr. Woolfson's methodology and of Defendants' election not to designate an expert of their own (a decision made over a year before trial by different counsel).

Defendants could not present expert testimony of their own to attempt to refute Woolfson's conclusions.  Defendants made a choice not to offer expert testimony in the days leading up to the original trial date (immediately prior to Kombu Kitchen's bankruptcy filing, which one speculates might have influenced the decision to forego an expert).  Based on that earlier choice, and on the passage of a significant amount of time, the court denied Defendants leave to stay the operation of the original expert discovery cut-off, in order to proffer expert testimony once the case was back on track for trial.

Of course, Defendants were still able to cross-examine Mr. Woolfson.  In doing so, they raised serious questions about Woolfson's qualifications, and his methodology. They also pointed out a rather alarming number of flaws in the analysis reflected by Exhibit 78.

Defendants attacked Mr. Woolfson's qualifications during cross-examination. They noted Woolfson did not graduate from college, has no advanced degrees, no professional certificates concerning the work performed in this case, and no certification for proficiency in database work (e.g., from Microsoft, Oracle, IBM, or others).  (TT 3/17/25 at pp. 28-31.)  The court has taken this information into account in assessing Mr. Woolfson's credibility.  The court has also taken into account the fact that a number of courts have rejected Mr. Woolfson's testimony in similar cases based on flaws in his methodology.

By Defendants' count, there are more than 18 flaws in Woolfson's methodology, cutting across both the meal and rest break analysis.  For purposes of this Statement of Decision, the court will focus on the issues that impact the court's conclusions.

First, Defendants identify a disconnect between numbers in Woolfson's spreadsheets and the underlying data.  Woolfson explains the disconnect, which impacts a comparatively small portion of the dataset, by noting some of the data could

EXHIBIT 1 - Page 15

not be "scraped" by the optical character recognition ("OCR") tools that he used to gather the data from payroll and time records to populate his database. Where data could not be scraped, Woolfson resorted to averaging. He also discounted the underlying hourly wage to minimum wage in an effort to avoid potential over-counting.

Second, Woolfson utilized 2018 pay rate data for 2019 and 2020. Third, he included some employees who had been promoted to a salaried position as class members entitled to assert claims as though they were paid by the hour. Fourth, Woolfson did not refer to a list of names of class members in preparing his analysis, which means that some employees who might not be members of the class were included in his analysis of class-wide damages. Woolson also included some opt-outs from the class in his calculations. Fifth, Woolfson counted waiting time penalties for people still employed by Kombu Kitchen.

Particularly problematic, Woolfson made no effort to break out southern California employees from employees at the Oakland facility. Only Oakland employees are entitled to damages in this case because Plaintiffs did not present any evidence concerning employees at Kombu Kitchen's southern California kitchens.

Several of Woolfson's errors were corrected in the Exhibit 81 spreadsheet. Woolfson fixed the problem of applying interest based on the date of alleged violations rather than to the date of a given paycheck (which over-counted interest). He addressed waivers of meal period issues by back of the house staff. He removed 33 people from his calculations because they were not on the class list or had opted out of the putative class. He also reduced premiums where a meal was taken but had been identified in the earlier spreadsheet as not taken. The new spreadsheet also relied on minimum wage for personnel where the "scraping" problem made it difficult (at least for Woolfson) to determine the accurate pay rate. Exhibit 81 also backed out numbers for rest break violations prior to February 1, 2019 per the court's order of April 3, 2025.

Of the 2,752 shifts with short meal breaks (Exh. 78, col. Y), Mr. Woolfson had included 890 shifts where the clocked break was 29 minutes long rather than 30 minutes. Exhibit 81 perpetuates the flaw in the methodology. The court, however, will back the 890 shifts out in the final damages calculation.

The court finds that Mr. Woolfson's testimony and work product (Exhibit 81) is helpful for what it is – an imperfect attempt to use the available data, discounted by using assumptions including averaging and minimum wage in lieu of the actual hourly wage, in order to provide a ballpark damages estimate for missed meal and rest breaks and for related penalties. The court declines to disregard it in its entirety as Defendants request, which would effectively end the case. Even after taking into account Woolfson's methodological flaws, Defendants were not able to rebut the presumption imposed under *Donohue* with regard to Kombu Kitchen's Oakland-based employees.

EXHIBIT 1 - Page 16

The better approach is to account for the flaws in Woolfson's methodology. Woolfson's efforts to build the database were sometimes unsuccessful – failing to include data that either could not be "scraped" using OCR. These represent a number of blind spots in the data that cannot entirely be blamed on Kombu Kitchen's record-keeping. Woolfson adjusted for these problems by averaging, and by discounting certain employees' hourly wages down to minimum wage in order to avoid over-counting. The approach is reasonable and the court will use it.

The flaws Defendants identify in Woolfson's analysis are at times significant. Plaintiffs characterize those flaws as "quibbles" about damages. The court disagrees with that characterization – those "quibbles" require the court to substantially cut back Plaintiffs' potential damages in order to address the flaws in Woolfson's methodology. The flaws, however, do not undermine the conclusion that Kombu Kitchen's records reflect a serious problem concerning breaks for concierge and back of the house staff in Oakland.

Beyond Woolfson's analysis and conclusions, the evidence reflects that Kombu Kitchen's approach to meal breaks was generally careless. The company policy generally precluded taking a meal break while at a client site, and eating a meal while driving to and from a client is not the sort of break required under California (as described in *Brinker*).

The evidence, including testimony from the individual defendants, reflects that the company operated under the assumption that their concierge employees would be satisfied with meals taken at the end of their shifts, back at the Oakland facility. Sometimes employees ate together for what they called a "family meal," and others took the food home (as Zina Evans described in her testimony). The reality appears to have been that, at that point, many employees just wanted to go home.

Defendants pointed to instances when concierge employees did avail themselves of meals at the end of the day, but that evidence was primarily anecdotal; it was not the sort of shift-by-shift analysis required to rebut the *Donohue* presumption. For example, a Kombu Kitchen client contact at tech firm Keep Trucking testified about Kombu Kitchen's services, and the down-time she observed for concierge employees at a client site, but she admitted she could not tell if the concierges were taking meal or rest breaks as required by California law. During cross-examination of the testifying plaintiffs, Defendants emphasized times during a shift when it might have been possible to take a meal or rest break. Anecdotes and efforts to point out that a shift as a concierge was not always demanding aside, the preponderance of the evidence established that the company's approach to meal breaks did not comply with the requirements of the California Labor Code.

Defendants came closer to the mark in presenting evidence concerning meal breaks for the back of the house kitchen staff, but still fell short in the effort to rebut the

EXHIBIT 1 - Page 17

*Donohue* presumption.  The back of the house employees have still shown sporadic shortened or interrupted (rather than missed) meal breaks.  The testifying back of the house plaintiffs explained that they had generally been permitted to take meal breaks.  Typically, managers required everyone working on a given shift to take their meal break at the same time.

For example, Pahola Ramos had been a back of the house kitchen employee in Oakland.  Ramos testified that kitchen staff did get meal breaks (and specifically that they took their break at 7:30pm daily for the evening shift), but they were often interrupted and/or were too short.  There was always pressure to finish food preparation more quickly, and Ramos did not believe the kitchen staff was given enough time to do their jobs.  As a result, breaks were interrupted.  Ramos said she was unaware of any documents that would corroborate her testimony and that she had no confidence her time records were accurate.  Ms. Vergara's testimony concerning interrupted breaks was consistent.

Kombu Kitchen also presented evidence that, starting in January 2020, many back of the house employees signed meal break waivers when on shifts of less than six hours.  (Compendium Exhs. 5, 6.)  The waivers undermine the back of the house employees' ability to seek damages for shortened/interrupted meal breaks after the waivers were introduced.

As a result of the flaws in Mr. Woolfson's methodology, the damages calculation is not as easy as simply adopting the numbers in Exhibit 78 – or the adjusted figures in Exhibit 81 – as the damages award.

Exhibit 81 helps back out the numbers for the back of the house employees who signed a waiver in January 2020 or later from the meal break award.  Given the waivers that appeared for back of the house employees starting in late January 2020, and given the termination of the vast majority of Kombu Kitchen's employees in March 2020 due to the Covid-19 pandemic (which effectively ended the class period), the impact of the waivers on damages for missed meal breaks was not substantial.

It is necessary to adjust the meal break numbers in Woolfson's Exhibit 81 to back out shifts worked by Kombu Kitchen employees in southern California.  Plaintiffs did not present evidence concerning meal breaks for employees outside of the Oakland facility.  And Defendants methodically cross-examined all of the testifying plaintiffs to confirm that they could not speak about meal break policies or practices at southern California locations.  Given the relative sizes of Kombu Kitchen's operations, the court will apply what is likely a conservative estimate that a third of the meal break violations are attributable to southern California employees and are to be backed out of the calculation.

EXHIBIT 1 - Page 18

Finally, Defendants contend that the court should eliminate any damages relating to short or late meal breaks based on the class certification order.  The court fundamentally disagrees with Defendants' contention that the class certification order only permitted claims relating to completely missed meal breaks.  That does not appear to have been the purpose of the language Judge Seligman used in the class certification order.  Rather, the issue has always been framed as whether Kombu Kitchen violated the meal break requirements under the Labor Code.  These necessarily encompass short or late meal breaks in addition to meal breaks that were never taken at all.  Maintaining the meal break claim would not result in any prejudice to Defendants, who have unquestionably been preparing for the claim since the filing of the original complaint.  By contrast, paring back the scope of the case would be fundamentally unfair to the plaintiffs here, who have never made a secret of their intent to seek a remedy for short and late meal breaks along with missed breaks.

Given the evidence, the court finds that Plaintiffs have proven by a preponderance of the evidence damages for missed meal breaks (and before applying penalties) as set forth in the Order above.

## B.  The Rest Break Claims (Labor Code, §§ 226.7 and 512)

Kombu Kitchen had a duty to provide rest breaks under Labor Code section 226.7.  Under the Labor Code, "An employee is entitled to a paid 10-minute rest break during every four-hour work period, or major fraction of four hours."  (CACI 2760 (2025); Labor Code, § 226.7.)

Generally speaking, a break really needs to be a break.  California law "prohibits on-duty and on-call rest periods."  (*Augustus v. ABM Security Servs., Inc.* (2016) 2 Cal.5th 257, 260 (*Augustus*).)  Labor Code section 226.7 requires "that employers relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call.  A rest period, in short, must be a period of rest."  (*Id.* at p. 273.)

According to CACI 2760, which accurately summarizes the case law on this point, "An employer must relieve the employee of all work duties and relinquish control over how the employee spends time during each 10-minute rest break.  This includes not requiring employees to remain on call or on-site during rest periods."  (CACI 2760.)  Plaintiffs must show (1) "That [the employee] worked for [Kombu Kitchen] on one or more workdays for at least three and one-half hours; and (2) That [Kombu Kitchen] did not authorize and permit [the employee] to take one or more 10-minute rest breaks to which [the employee] was entitled."  (CACI 2761.)

As strong support for their rest break theory, Plaintiffs point to Kombu Kitchen's client interaction policy.  Quoted at length above, the client interaction policy (Exh. 68) places a premium on displaying the utmost professionalism while a concierge employee

EXHIBIT 1 - Page 19

is at a client site.  The ability to even have a sip of water is highly constrained under the policy.  Even short bathroom breaks are discouraged under the policy because the "quality of service is lowered."

Defendants attempt to discount the importance of the client interaction policy, noting that they only found 13 people had signed the acknowledgement of that policy (see Exh. 30141).  The individual defendants denied knowing about the policy.

The court is not persuaded by Defendants' evidence or arguments on this point.  The client interaction policy is printed on "Nybll" letterhead.  The Thibeaults may not have drafted it, but the policy is found in Kombu Kitchen's files and one of their managers almost certainly did.  The evidence reflects the company undertook at least some effort to have concierge employees sign copies of the policy in 2019.  Based on the testimony of the concierge employees at trial, there is every reason to believe that it accurately reflects company policy concerning behavior at client sites.

Employee testimony corroborates Kombu Kitchen's overall rest break problem.  "Our break was driving," testified Verakerr Lopez in but one example.  Lopez's longest drive was approximately 30 minutes, from Oakland to a client in San Jose (Lopez herself did not drive and traveled with a driving co-worker).  Testimony of other concierge witnesses was consistent.  The evidence strongly reflects that Kombu Kitchen did not have the *Augustus* standard at all in mind when instructing its concierge employees on how to behave at client sites.

The court was unimpressed by Defendants' focus on showing that the work itself was not particularly strenuous and left concierge employees with plenty of time for possible breaks before, during, and after a food service.  The problem with the argument is that, as the policy said, from leaving the kitchen until returning to the kitchen a concierge employee was effectively on full alert, without a meaningful opportunity to take a rest break.  Employees testified about receiving and sending work-related text messages throughout a work shift, and being otherwise occupied with work (even in small amounts).  The fact that there was a lull between setting up the food service and cleaning it up at a client site did not mean the employees effectively had a long rest break (or series of rest breaks).  The written policy, and the general practice at Kombu Kitchen, was that employees had to avoid taking a real rest break – as described by *Augustus* – until returning back to the kitchen.

Liability thus established, the question of damages is more of a challenge as a result of the problems with Mr. Woolfson's analysis and work product (Exh. 81).  The court identified flaws with Woolfson's conclusions above in the context of meal breaks, and included flaws relating to rest breaks in that discussion.  As with the meal breaks, the court's most significant concern is with regard to backing out the numbers for alleged rest break violations in southern California versus the proven allegations concerning missed rest breaks at the Oakland location.

16

EXHIBIT 1 - Page 20

The court's ultimate damage award is set out in the Order above.  As a starting point, the court utilized some of the numbers set out on pages 14-15 of Plaintiffs' Joint Reply to Kombu Kitchen's Closing Brief (filed 10/2/25).  Unfortunately, the court found it difficult to tie out the numbers.  The "total" proposed damages -- $6,681,653.07 – ought to be equal to the sum of the proposed damages that appear in the table above it.  But that sum is only $5,388,933.57 (which is $427,027.53 (meal break violations) + $285,942.90 (rest break violations) + $3,664.50 (§ 2802 reimbursements) + $1,303.449.07 (§ 203) + $98,100 (§ 226) + $520,000 (§ 226.3) + $104,000 (§ 558) + $208,000 (§ 204) + $1,303,449.07 (§§ 256/2699.5/1197.1) + $772,560 (same)).  It does not add up.

Plaintiffs' final proposed damages also seem to double count PAGA penalties under sections 256, 2699.5, and 1197.1 – adding together both the $1,303,449.07 figure form Exhibit 78 with the $772,560 from Exhibit 81.  There may be an explanation for this issue, and one set of penalties might relate to the various break violations with the other set relating to wait time penalties.  This is not evident from the chart in the reply brief.  The court also notes that the section 203 penalties (essentially 30 days of wages post-termination) match identically the PAGA penalties under sections 256, 2699.5, and 1197.1 as calculated in Exhibit 78.  This causes the court some concern that $772,560 might be the appropriate starting point for calculating damages under section 203 (though the court did in fact use the $1.303 million figure as its starting point for the section 203 award).

The court has reduced aspects of Plaintiffs' proposed award by approximately 1/3 as to meal and rest break violations in order to account for the fact that Mr. Woolfson's numbers include southern California Kombu Kitchen employees as to which Plaintiffs did not establish liability at trial.  While not as precise as the court prefers, the court's approach is within its discretion as the trier of fact based on the evidence at trial.

Given these issues, if the parties object to the tentative statement of decision the court asks that they very carefully explain each damages theory (or the flaws with those theories from Defendants' perspective) and march through the numbers – again very carefully.  They should be sure to address the court's concerns regarding over-counting by including southern California employees.

### C.   Expense Reimbursement Claims (Labor Code, § 2802)

Plaintiffs seek reimbursement for a number of expenses they incurred in connection with their work for Kombu Kitchen.  These include expenses relating to use of a number of smartphone apps.  For "back of the house" employees, the expenses also include the purchase of cutlery and non-slip shoes for use in the kitchen.

17

EXHIBIT 1 - Page 21

Under California law:

An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

(Labor Code, § 2802, subd. (a) [emphasis added].)

Concierge employees were required to download an app called "Tookan" to their smartphones.  They used the app to show they were working by uploading pictures of the setup at client locations, and showing that the area was clean after a food service. Kombu Kitchen did not attempt to compensate the concierge employees for having to use the app on their personal cellphones.

The evidence reflects that the concierge employees in Oakland were also expected to use other apps for work.  As discussed above, these included 7shifts for scheduling and, for some employees, the "Keep Trucking" app for purposes of tracking employees driving to and from client sites.

With regard to the back of the house employees, Ramos testified that they were required to use the 7shifts app for scheduling purposes.  No class was certified concerning reimbursement claims for the back of the house employees, and the court does not recall hearing evidence from other back of the house employees concerning 7shifts.

Ramos also testified that they had to purchase knives, and so purchased a $400 Japanese knife set for use in the kitchen.  Vergara's testimony was consistent concerning a knife purchase.  Vergara indicated she did not use 7shifts on her personal phone for scheduling.  Both Ramos and Vergara also testified they purchased special shoes for the job to avoid slipping in the kitchen, but neither testified that they were compelled by Defendants to make the shoe purchase.  They were not reimbursed for their work-related purchases, and testified that no one offered to do so.  That said, it also appears that they never asked.

The court notes that the Nybll client interaction policy for concierge employees references special non-slip shoes as part of an employee's attire.  It would not be a stretch to think that kitchen staff were advised to wear such shoes, too.

The court concludes that the concierge employees established their reimbursement claim by a preponderance of the evidence.  The court will award the $3,664.50 sought by Plaintiffs under section 2802.

EXHIBIT 1 - Page 22

The court awards the named back of the house employees $200 each on their individual reimbursement claims.

### D.  Individual Liability Under section 558.1

Section 558.1 of the Labor Code eliminates the need for plaintiffs to prove alter ego liability in order to make claims against individual business owners for purposes of a range of Labor Code violations.  It provides:

> (a) <u>Any employer or other person acting on behalf of an employer</u>, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.

> (b) For purposes of this section, the term "other person acting on behalf of an employer" is limited to <u>a natural person who is an owner, director, officer, or managing agent of the employer</u>, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code.

> (c) Nothing in this section shall be construed to limit the definition of employer under existing law.

(Labor Code, § 558.1 [emphasis added].)

Section 558.1 "expand[ed] liability for wage and hour violations," and the Legislature intended it to "discourage business owners from rolling up their operations and walking away from their debts to workers and starting a new company."  (*Espinoza v. Hepta Run, Inc.* (2022) 74 Cal.App.5th 44, 58 (*Espinoza*).)

The statute does not pierce the corporate veil and impose liability against any business owner for a wage and hour violation.  The individual him or herself must have violated or caused to be violated a relevant wage and hour restriction.  Put another way, the owner "must either have been personally involved in the purported violation of one or more of the enumerated provisions; or, absent such personal involvement, had sufficient participation in the activities of the employer, including, for example, over those responsible for the alleged wage and hour violations, such that the 'owner' may be deemed to have contributed to, and thus for purposes of this statute, 'cause[d]' a violation."  (See *Usher v. White* (2021) 64 Cal.App.5th 883, 896-897.)  Whether a business owner meets this test "cannot be determined by any bright-line rule," but rather "requires an examination of the particular facts in light of the conduct, or lack thereof, attributable to the" owner.  (Id. at p. 897; see *Espinoza, supra*, 74 Cal.App.5th at p. 58.)

EXHIBIT 1 - Page 23

In *Espinoza*, the business owner "testified he had no involvement in or knowledge of the business's operations," but the court discounted that testimony given other evidence confirming his knowledge about how his drivers were paid. (*Espinoza, supra*, 74 Cal.App.5th at p. 60.)  The Espinoza case confirms that an owner does not have to be intimately involved in the "day-to-day operations of the company" to trigger liability under section 558.1, but the owner "must have had some oversight of the company's operations or some influence on corporate policy that resulted in Labor Code violations." (Id.)

The big difference between *Espinoza* and this case is that Plaintiffs did not come forward with evidence that either Keven or Kristen Thibeault wrote the client interaction policy or that they specifically endorsed it or asked that a manager write it. Based on the trial record, one is left only to speculate as to who wrote the client interaction policy (perhaps a manager at the Oakland location) or when they wrote it (likely in late January or early February 2019).  Plaintiffs were unable to tie the client interaction policy to either of the individual defendants.  They also were unable to tie either of the individual defendants to the meal or rest break violations, or the pay statement claims.

Mr. Thibeault was Kombu Kitchen's CEO.  Beyond that, however, the evidence at trial did not link him to the specific Labor Code violations for which the court has found liability.  He did not draft employment policies or manage matters relating to non-exempt employees.  He does not review or access time records, he never observed an employee complaining of not receiving a meal break or rest break, he never spoke with any employees regarding issues concerning meal breaks and was never made aware that any employee ever missed a meal break, and he mainly worked with executive-level managers rather than day-to-day supervisors.

Ms. Thibeault was the majority owner of Kombu Kitchen.  The company headquarters was also the Individual Defendants' home.  She wrote the company's employee manual.  But, as with Mr. Thibeault, Plaintiffs did not tie Ms. Thibeault to the client interaction policy with evidence.  They also generally failed to tie her individually to the break violations, or the reimbursement violations, as to which the court has found liability.  Plaintiffs were unable to prove that section 558.1 applies to the individual defendants by a preponderance of the evidence.

### E.  Accurate Wage Statements (Labor Code, §§ 203 and 226, subd. (a)), Statutory and PAGA Civil Penalties (Labor Code, §§ 558 and 2699), and the UCL (Bus. & Prof. Code, § 17200, et seq.)

The Labor Code sets out civil penalties for an employer's violations of it.  PAGA sets out further civil penalties that can be collected by a civil litigant on behalf of other aggrieved employees.  (Labor Code, § 2699.)  PAGA penalties "are mandatory, not

EXHIBIT 1 - Page 24

discretionary." (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1213.)  The penalties are not high, but in the aggregate and over time they can become substantial.

### 1. Wage Statement Violations

California sets out a number of requirements for wage statements, many of which are found in Labor Code section 226(a).  Relevant here is the requirement that a wage statement "report premium pay for missed breaks."  (See *Naranjo v. Spectrum Sec. Servs., Inc.* (2022) 13 Cal.5th 93, 121.)  Statutory damages are "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."  (Labor Code, § 226, subd. (e)(1).)

According to Plaintiffs, Kombu Kitchen failed to accurately pay wages based on missed meal and rest breaks (they contend "actual hours worked were not accounted for"), or to list meal and rest break premiums, on employee wage statements, triggering statutory penalties under Labor Code section 226(e)(1).  (Pl. Jt. Closing Br. at p. 12.)

An employee "suffers injury" under these provisions if the employer does not provide "accurate and complete information" such that the employee "cannot promptly and easily determine from the wage statement alone" the information that is supposed to be there.  (See *Naranjo v. Spectrum Sec. Servs., Inc.* (2024) 15 Cal.5th 1056, 1070, citing *Murphy v. Kenneth Code Prods., Inc.* (2007) 40 Cal.4th 1094, 1108 (quoting Labor Code, § 226, subd. (e)(2)(A).))  Plaintiffs seek penalties under section 226.3 of $250 per wage statement.  (Pl. Jt. Closing Br. at p. 13.)

### 2. Derivative Wage Statement Violations

Plaintiffs assert a number of derivative wage statement claims based on proof of uncompensated meal and/or rest breaks.  Where the employee earned a break but did not take it and was not paid a premium for missing the break, the failure to pay the premium not only violates the meal and rest break law but also makes the wage statement inaccurate under Labor Code section 226, subdivision (e).

To win these penalties under section 226, Plaintiffs must prove that Kombu Kitchen's misconduct was knowing and intentional.  Kombu Kitchen, for its part, had the opportunity to show its failure to comply with section 226 "was the product of a reasonable, good faith … belief that it has complied with wage statement requirements. (*Naranjo, supra,* 15 Cal.5th at pp. 1087-1088.)  An "employer's objectively reasonable, good faith belief that it has provided employees with adequate wage statements precludes an award of penalties under section 226, subdivision (e)(1).  An employer that believes reasonably and in good faith, albeit mistakenly, that it has complied with wage

EXHIBIT 1 - Page 25

statement requirements does not fail to comply with those requirements knowingly and intentionally." (*Id.* at p. 1087.)

Kombu Kitchen largely failed to show that its failure to comply with section 226 was based on a reasonable good faith belief it had complied with wage statement requirements. Instead, it argues Plaintiffs' case suffers from a failure of proof because Plaintiffs did not introduce the wage statements into evidence. Defendants contend the court has no way to decide which wage statements were inaccurate.

The court disagrees. Testimony from Mr. Woolfson, and from many Kombu Kitchen employees, generally establishes that premium pay for meal and rest breaks was missing from wage statements. The thousands of wage statements at issue need not be admitted into evidence in order to identify the problem for purposes of establishing liability by a preponderance of the evidence.

### 3. *"Waiting Time" Violations*

When an employee stops working for a company in California, the employer is supposed to promptly pay them. (Labor Code, §§ 201, 203, subd. (a).) Someone who is terminated has to be paid "immediately." (Labor Code, § 201.) Someone who leaves voluntarily has to be paid everything they are owed within 72 hours of quitting. (Labor Code, § 203, subd. (a).) If the employer willfully fails to timely pay, then statutory waiting time penalties are triggered.

Again, Plaintiffs' claims are based on missed, short, and late meal breaks. The claim itself is tied to the wage statement – if a wage statement does not reflect missed meal breaks, and fails to include premium pay for the missed meal break, and also fails to reflect missed rest breaks, and fails to include premium pay for the missed rest break, Plaintiffs still collect the penalty only once. "Stacking" multiple penalties where only one wage statement is involved would be inappropriate double (or triple or quadruple) counting.

The court's conclusions regarding the various penalties are set out in the order at the start of this Statement of Decision. In several instances, the court has adjusted the award by using the numbers proffered by Plaintiff and discounting them by 1/3 in order to address the "southern California" flaw in Mr. Woolfson's methodology (in other words, in order to reduce the size of the award to reflect violations proven by the Oakland workers, the court reduced the overall proposed award by 1/3, since the overall numbers appear to include a substantial number of southern California workers). While not ideal or as precise as the court would prefer, this approach to damages is within the court's discretion based on the available evidence at trial.

EXHIBIT 1 - Page 26

### 4.  *Statutory and PAGA Penalties*

Regarding statutory penalties under the Labor Code, section 558, subdivision provides:

"Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee."

(Labor Code, § 558, subd. (a).)  Meal breaks under Labor Code section 512 are within the "chapter" referenced by section 558.  So are rest breaks under section 226.7.

PAGA penalties impose $100 "for each aggrieved employee per pay period."  The amount goes up to $200 if the court "determines that the employer's conduct giving rise to the violation was malicious, fraudulent, or oppressive."  (Labor Code, §2699, subd. (f)(2)(A), (B)(ii).)

The court has discretion to "award a lesser amount than the maximum civil penalty … if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory."  (Labor Code, § 2699, subd. (e)(2).)

IT IS SO ORDERED.


December 31, 2025

_____
Michael M. Markman
Judge, Superior Court of California
Alameda County

EXHIBIT 1 - Page 27

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>12/31/2025<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _Meghan Smith_ Deputy<br>T. Smith |
| PLAINTIFF/PETITIONER:<br>Aja De Coudreaux  et al | |
| DEFENDANT/RESPONDENT:<br>Kombu Kitchen SF, LLC et al | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>RG20058323 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the TENTATIVE STATEMENT OF DECISION AFTER BENCH TRIAL entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Craig P. Ramsdell
Garofolo & Ramsdell, LLP
cramsdell@garofololaw.com

Dirk Odell Julander
Julander Brown & Bollard
adam@jbblaw.com

Jesse Michael Caryl
Bent Caryl & Kroll, LLP
jcaryl@bcklegal.com

Paul Pfeilschiefter
Bailey Law Partners, LLP
paul@workerrightsattorney.com

Tania Fonseca
Mallison & Martinez
enotices@themmlawfirm.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 12/31/2025

By:

T. Smith, Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Alameda

12/31/2025

Chad Finke, Executive Officer / Clerk of the Court

By: _____ Deputy
T. Smith

COURTHOUSE ADDRESS:
Rene C. Davidson Courthouse
1225 Fallon Street, Oakland, CA 94612

PLAINTIFF/PETITIONER:
Aja De Coudreaux  et al

DEFENDANT/RESPONDENT:
Kombu Kitchen SF, LLC et al

## CERTIFICATE OF MAILING

CASE NUMBER:
RG20058323

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Jesse M. Caryl
Bent Caryl & Kroll LLP
6300 Wilshire Boulevard
Suite 1415
Los Angeles, CA 90048-

Stan S. Mallison
Law Offices of Mallison & Martinez
1939 Harrison Street
Suite 730
Oakland, CA 94612-

Chad Finke, Executive Officer / Clerk of the Court

Dated: 12/31/2025

By:

T. Smith, Deputy Clerk

**CERTIFICATE OF MAILING**

**EXHIBIT 1 - Page 29**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **CASE STATUS REPORT,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 13, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached NEF service list.

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) January 13, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Barry Russell                    (via Priority Mail)
United States Bankruptcy Court
255 East Temple St, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 13, 2026 | Martha E. Araki | /s/ Martha E. Araki |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

In re Kombu Kitchen SF LLC                                        Case No. 2:23-bk-17276-BR

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- <u>Attorneys for Debtor Kombu Kitchen SF LLC</u>:  **David B. Zolkin, Catherine Liu, Daniel J. Weintraub, James R. Selth**:  dzolkin@wztslaw.com; cliu@wztslaw.com; dweintraub@wztslaw.com; jselth@yahoo.com; maraki@wztslaw.com; sfritz@wztslaw.com; admin@wztslaw.com
- <u>Subchapter V Trustee</u>:  **Mark Sharf**:  mark@sharflaw.com; C188@ecfcbis.com; sharf1000@gmail.com; 2180473420@filings.docketbird.com
- <u>Attorneys for American Express National Bank c/o Zwicker & Associates, P.C.</u>:  **Karen L. Belair**: kbelair@zwickerpc.com
- <u>Attorneys for Creditors Maria de Jesus Vergara and Aja de Coudreaux, and Attorney Paul Pfeilschiefter</u>:  **Cody Alexander Bolce**:  cbolce@themmlawfirm.com; enotices@themmlawfirm.com
- <u>Interested Party/Courtesy NEF</u>:  **Todd S. Garan**:  ch11ecf@aldridepite.com; TSG@ecf.inforuptcy.com; tgaran@aldridgepite.com
- <u>Attorneys for Creditor F50 League LLC</u>:  **Jason R. Gianvecchio**:  jgianvecchio@cwlfirm.com
- <u>Attorneys for Interested Party Sysco Corporation, Sysco San Francisco, Inc., and Newport Meat Northern California, Inc.</u>:  **Robert P. Goe, Brandon J. Iskander**:  kmurphy@goeforlaw.com; rgoe@goeforlaw.com; goeforecf@gmail.com; biskander@goeforlaw.com; ajohnston@goeforlaw.com; goe.robertp.r@notify.bestcase.com
- <u>Attorneys for Creditor AmTrust North America, Inc. on behalf of Wesco Insurance Company</u>:  **Alan Craig Hochheiser**:  ahochheiser@mauricewutscher.com; arodriguez@mauricewutscher.com
- <u>Interested Party/Courtesy NEF</u>:  **Elan S Levey**:  elan.levey@usdoj.gov; usacac.tax@usdoj.gov; caseview.ecf@usdoj.gov; usacac.tax@usdoj.gov
- <u>Attorneys for Creditors Aja de Coudreaux and Maria De Jesus Vergara, and Attorney Paul Pfeilschiefter</u>:  **Paul Pfeilschiefter**:  paul.pfeilschiefter@workerrightsattorney.com; paul.pfeilschiefter@gmail.com
- <u>Attorneys for Interested Parties Keven Thibeault and Kristen Thibeault</u>:  **Craig Ramsdell**:  cramsdell@garofololaw.com
- <u>Attorneys for Ally Bank c/o AIS Portfolio Services, LLC</u>:  **Amitkumar Sharma**:  amit.sharma@aisinfo.com
- <u>Attorneys for Creditor Wells Fargo Bank, N.A. dba Wells Fargo Auto</u>:  **Ashley Soto, Samantha White**:  ashley.p.soto@wellsfargo.com; samantha.white@wellsfargo.com
- <u>Attorneys for Debtor Kombu Kitchen SF LLC</u>:  **Michael Adam Tate**:  adam@jbblaw.com
- <u>Attorneys for Creditor Bi-Rite Restaurant Supply Co., Inc.</u>:  **Kaipo K.B. Young**:  KYoung@BL-Plaw.com
- <u>Attorneys for Creditor Night Heron Oakland, LLC</u>:  **A. David Youssefyeh**:  david@adylaw.com
- <u>US Trustee's Office</u>:  ustpregion16.la.ecf@usdoj.gov; **Ron Maroko**:  ron.maroko@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                              **F 9013-3.1.PROOF.SERVICE**